STATE of Missouri, Respondent,

v.

John W. SHARP, Appellant.

No. 59288.

Supreme Court of Missouri,
En Banc.

March 8, 1976.

Alan G. Kimbrell, Rosecan, Popkin & Chervitz, St. Louis, Brent J. Williams, Clayton, for appellant.

Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, John W. Sharp, was convicted of assault with intent to do great bodily harm by the Circuit Court of Carter County, Missouri, and was sentenced to imprisonment for a term of three years. Following rendition of judgment and imposition of sentence, an appeal was perfected to the Springfield District of the Court of Appeals, where the judgment was affirmed. Upon application of appellant, the cause was transferred here by order of this Court. We determine the cause "the same as on original appeal." Mo.Const. Art. V, § 10.

On or before December 2, 1974, the prosecuting attorney in and for Carter County and attorney for appellant entered into a "disposition agreement." It was agreed that the charge would be reduced from "assault with intent to commit great bodily harm with malice aforethought" to "assault with intent to commit great bodily harm;" that the case would be submitted to the trial court, without a jury, on an agreed statement of facts; and that the prosecuting attorney "would recommend five years and parole."

On December 2, 1974, the following transpired in open court:

"Q. (By the Court) Mr. Sharp, as the result of these charges, do you understand you are entitled to a jury trial in this county?

"A. Yes I do.

"Q. Do you understand that you could have that trial in some other county and that you could have some other Judge to reside? [sic]

"A. I understand, Judge.

\*      \*      \*      \*      \*      \*

"Q. From time to time have you discussed the nature of these charges and the range of punishment with Mr. Williams?

"A. Yes, I have.

"Q. To your satisfaction? A. Yes sir.

"Q. Have you discussed the possibility of a jury trial?

"A. Yes, we have.

\*    \*    \*    \*    \*    \*

"Q. Have you discussed this matter with your family?

"A. Yes, we've talked about it.

"Q. Have you talked about it to your satisfaction with Mr. Williams?

"A. Yes sir.

"Q. Do you understand the State would be required to prove your guilt beyond a reasonable doubt?

"A. Yes, I understand that.

"Q. Do you understand that you could confront witnesses sought by the State to prove your guilt?

"A. Yes sir.

"Q. Do you understand that you could cross-examine these witnesses under oath and in open Court; do you understand that?

"A. I understand that.

"Q. Do you understand that the presumption of innocence would be with you throughout every proceeding in this trial and the jury would be instructed that you would be innocent until they would enter the jury room and thereafter deliberate in accordance with the instructions of the law and the evidence and that they would find you guilty beyond a reasonable doubt and until that time you would be presumed innocent. Do you understand that?

"A. I understand.

"Q. I'm informed by your lawyer that it's his intention to submit this matter to the Court on an agreed stipulation set of facts; do you understand that?

"A. Yes.

"Q. And if the Court permits that procedure, you would in effect be giving up your right to a jury, you would be giving up your right to confront witnesses and you'd be giving up your right to any number of other safeguards guaranteed to you by the State and Federal Constitutions. Do you understand that?

"A. I understand that, sir.

"Q. At this time I'm going to enter a plea of not guilty, do you understand that?

"A. I understand.

"Q. Is it your desire to enter a plea of not guilty?

"A. Yes sir."

On December 2, 1974, the trial court then "informed himself to the full extent" of the stipulation of facts; found appellant guilty; ordered appellant to appear for sentencing on January 24, 1975; and ordered a pre-sentence investigation.

On January 20, 1975, a pre-sentence report was filed. This report concluded that "we would consider it in the best interest of society that this person be placed in the institution."

On January 24, 1975, appellant again appeared and the trial court addressed him as follows:

"Q. (By the Court) You understand that your case was tried on a stipulated set of facts, Mr. Sharp?

"A. Yes, I understand that.

"Q. And that based upon that, this Court found you guilty, do you understand that?

"A. I understand that, Your Honor.

"Q. And then when you agreed to submit this cause on a stipulated set of facts, that you waived or gave up your right to a jury trial. Do you understand that?

"A. I understand that sir, yes.

"Q. Is that still your desire?

"A. That's still my desire.

"Q. To give up your right to a jury trial?

"A. Yes sir.

"Q. You have no desire to withdraw the stipulated set of facts and request a jury trial?

"A. No, I'll let it stand the way it is.

"Q. And you understand that this Court is not bound by any recommendation which the Prosecuting Attorney may make or your attorney may make?

"A. I understand that.

"Q. Do you understand that the disposition of this case rests solely at this time with this Court and no other person?

"A. I understand. Yes sir.

"Q. Has any person led you to believe that you would be granted probation or parole?

"A. Well, that was my expectations, you know.

"Q. That's your hope. I'm asking now if any person led you to believe that you are going to be granted probation?

"A. Well I didn't know this to be a fact, no sir. The only reason why I presumed that, I was talking to the Probation Officer and they checked me out in Jefferson County and seen that I lived up there. That's the only reason I would think this, you know.

"Q. Again for the record, there is a distinction about what I'm talking about. You want probation.

"A. Yes, I'd like to have that. Yes sir.

"Q. I'm asking has any person promised you probation? Or parole?

"A. No, no. No one's done anything like that. No.

"Q. Has any person promised you anything in return in submitting this case on the stipulated facts?

"A. No one has done anything like that, no.

"Q. Any person made any threats?

"A. No, they haven't.

"Q. Do you have any lawful reason why this Court should not impose sentence, Mr. Sharp?

"A. No, I haven't.

"THE COURT: Your application for relief will be denied. It's the order, sentence and judgment of this Court that you be confined in the Missouri Department of Corrections for a period of three years. The Clerk is ordered to prepare a Warrant of Committment and the Sheriff ordered to transport you without delay to the Missouri Department of Corrections.

"That'll be all.

"MR. WILLIAMS: May I say a few things for a possible application for parole at this time?

"THE COURT: I believe, Mr. Williams, that the matters [sic] has been developed as far as it needs to be in so far as this Court is concerned.

"MR. WILLIAMS: If I may say something for the record, Judge.

"THE COURT: Whatever you want for the record, you do so but not as a plea to this Court. If you think you've been in error somewhere—

"MR. WILLIAMS: No I haven't but I was under the distinct impression that Mr. Negaard was going to make recommendation to the Court at an earlier stage of a sentence of five years and a parole. Is that not ture [sic], Mr. Negaard?

"MR. NEGAARD: Yes.

"MR. WILLIAMS: I think that was our understanding, Judge.

"MR. NEGAARD: The Court is not bound by my recommendation.

"MR. WILLIAMS: I understand.

"THE COURT: The cause was submitted, Mr. Williams, on a stipulated set

of facts. The defendant was found guilty, I ordered a pre-sentence investigation and based upon the pre-sentence investigation, I have decided not to grant either probation or parole."

On January 31, 1975, attorney for appellant filed a "Motion for New Trial" in which appellant asserted he had been deprived of due process of law, of effective assistance of counsel, and of his right to a trial by jury.

On February 6, 1975, attorney for appellant filed an "Amended Motion for a New Trial" in which he attacked the sufficiency of the pre-sentence report, asserted unethical conduct on the part of the prosecuting attorney, and asked "the Court to grant him all of the relief prayed for in the Motion for a New Trial" filed on January 31, 1975.

On February 11, 1975, the trial court conducted a hearing. We have carefully read the transcript of that hearing and have concluded that the "disposition agreement" set forth above was made; that the trial court was advised of the agreement; that it was customary practice for the trial judge, in taking *guilty pleas*, to indicate to the accused what he was going to do regarding sentencing and to then allow the accused to withdraw his plea, if he desired, and have a jury trial; that the attorney for appellant told appellant that if the trial court did not grant parole, appellant "could withdraw his guilty plea or in this case the statement of facts which would be equivalent;" that the prosecuting attorney recommended "five years and parole;" but that the trial court, after studying the pre-sentence report, reached an independent judgment and refused to accept the recommendation.

The position of the trial court is as follows:

"THE COURT: Mr. Williams, the transcript prepared by my Reporter on guilty pleas as required by the Supreme Court Rule, I can't cite the Rule but the Rule requires the Reporter to transcribe all guilty pleas.

"MR. WILLIAMS: Yes sir.

"THE COURT: And I cannot recall any guilty plea where I have not, at the conclusion of accepting the guilty plea, asked the defendant if he chose to withdraw a plea of guilty and after the sentencing, I cannot recall failing to ask the defendant if he desired to again set aside or withdraw his plea of guilty and you were correct and Mr. Negaard was correct in telling you that is my practice on guilty pleas.

"The Court did not treat this matter as a guilty plea. The Court considered this matter a contested matter as per the stipulation filed herein with the Court. The stipulated facts was [sic] much greater than any guilty plea that I can remember and contained much more information than I could have ever gotten out of a guilty plea. I did not consider this a guilty plea and I tried it as a contested case.

"It is true that the facts contained in there pointed only to one direction and that's guilt but keep in mind that this Court did not prepare the stipulation. It was prepared by counsel. In fact, I don't know who prepared it, both parties signed it and here again, I did not choose the way you tried this case. I approved it and I'll be frank for the record, that this is the first time a case was presented to the Court on an agreed stipulation of fact but I've permitted it and I think the case was tried fairly before this Court.

"Had the defendant entered a plea of guilty, at the end of the plea of guilt and before sentencing, he would have been afforded an opportunity to withdraw a plea of guilty before the three year sentence was imposed and again on a plea of guilty, he would have been permitted to withdraw his plea of guilt. Yes, that is my practice and my procedure and the Prosecutor—Prosecuting Attorney did not mislead anybody on that point.

"However, for the record, this Court did not treat this case as a plea of guilty,

I treated it as a contested case. Any further inquiry, Mr. Williams? I want you and I want this defendant, if he does go to prison, I want him to know why and I want you to know why and I want some appellant court to know why. I want this defendant to have as broad a record as possible."

In Missouri courts, a person accused of the commission of a felony has the right of trial by jury, and he may waive that right. Mo.Const. Art. I, § 22(a). The right is also guaranteed by the United States Constitution, and he may waive the right under the United States Constitution. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).

In *Dranow v. United States*, 325 F.2d 481, 482 (8 Cir. 1963), the Court observed:

"Unquestionably a criminal defendant is guaranteed the right to a trial by jury by Article III, Section 2, Clause 3 of the Constitution of the United States and the Sixth Amendment to the Constitution. However, it is well-established law that a criminal defendant has a right to waive his constitutional right to a jury trial provided such waiver is voluntarily, knowingly and intelligently made. *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854; *Adams v. United States*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268. With respect to jury waiver, the Court in *Patton* states:

"'Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.' 281 U.S. 276, 312–313, 50 S.Ct. 253, 74 L.Ed. 854.

"In *Adams* the defendant, who had some legal training, refused counsel and without the benefit of counsel waived a jury trial. The Court held: 'And whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' The Court goes on to say:

"'The *Patton* decision left no room for doubt that a determination of guilt by a court after waiver of jury trial could not be set aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made. If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it.' 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268."

We have concluded that manifest injustice has resulted in this case (Rule 27.20(c)). At the hearing before the trial court on February 11, 1975, the attorney for appellant said:

"MR. WILLIAMS: Sir, what I'm saying is that I figured that this Court would treat him no differently than anybody else who entered a plea of guilty here because of the nature of the stipula-

tion. I mean it's not really a contested stipulation. We could go through it but there really isn't any contest in it, Judge. That's all I'm trying to say.

"If there's anybodys [sic] fault here, I'd say it's mine. \* \* \* I'm saying it's my fault and it may not be the Court's or Mr. Negaard's but that's what I felt was communicated to me and I communicated that to my client."

■ The circumstances in this case are such that we believe appellant must be accorded relief. He, and his attorney, believed that if the trial court decided to refuse parole, he would be given the opportunity to withdraw his waiver of trial by jury. Accordingly, we are convinced that his waiver of trial by jury was not intelligently made, that "the burden of showing essential unfairness" has been sustained by him, and that it has been sustained "not as a matter of speculation but as a demonstrable reality." *Adams v. United States*, supra, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268.

The judgment is reversed and the cause remanded.

All concur.