STATE of Missouri, Plaintiff–
Respondent,

v.

Lonzo Jessie BRITT, a/k/a Lonnie
Britt, Defendant–Appellant.

No. SD 29274.

Missouri Court of Appeals,
Southern District,
Division Two.

June 10, 2009.

Margaret M. Johnston, of Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Shaun J. Mackelprang, Assistant Attorney General, of Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Lonzo J. Britt ("Defendant") appeals his conviction following a bench trial of the unclassified felony offense of statutory rape in the first-degree. *See* section 566.032.[1] Defendant's sole point on appeal is that the trial court plainly erred by trying the case without a jury because the record "did not demonstrate with unmistakable clarity that [Defendant] knowingly, intelligently and voluntarily waived his right to a trial by jury." Finding this assertion to be refuted by the record, we affirm.

## I. Facts and Procedural Background

Because Defendant does not challenge the sufficiency of the evidence to support his conviction, we cite only those facts necessary to our disposition of Defendant's point. Defendant's case was originally scheduled for a trial by jury but, by agreement of the parties, the case was re-set to be tried by the court without a jury. About a week before the scheduled bench trial, Defendant's attorney, Rebecca Burke ("Defense Counsel"), filed a written jury trial waiver that stated:

> COMES NOW Defendant, by and through counsel, [Defense Counsel], Assistant Public Defender, and having been advised by counsel of his right to trial by jury in the above-captioned cause, hereby waives his right to trial by jury in this case and submits the trial of this cause to the Court, all pursuant to Article I, Section 22(a) of the Constitution of Missouri.

The jury waiver was signed by both Defendant and Defense Counsel.

Just prior to the start of the bench trial, the court asked Defense Counsel if she had "discussed the pros, cons [sic] of having a jury hear this matter as opposed to the Court without a jury[?]" When Defense Counsel responded affirmatively, the court asked her if Defendant had "executed this written request to waive the jury and indicated that was his preference and intent[?]" Defense Counsel again responded in the affirmative. Defendant was present during this exchange and said nothing. The trial court did not directly

---

1. Unless otherwise indicated, all references to statutes are to RSMo 2000 and all rule references are to Missouri Rules of Court (2008).

examine Defendant about his jury waiver. The trial then began without a jury present. After hearing the evidence, the trial court took the matter under deliberation and set a reappearance date. At no point during the bench trial did Defendant indicate that he had wanted or expected his case to be tried to a jury.

About a week later, the parties again appeared before the trial court as ordered to hear the court's decision on the case. The court announced that it found Defendant guilty of first-degree statutory rape and set a sentencing date. Again, Defendant said nothing about any claim that he had been denied a jury trial.

The sentencing hearing took place over a month-and-a-half later, and the trial court sentenced Defendant to serve a term of twelve years in the Department of Corrections. After announcing its sentence, the trial court asked Defendant if he had been satisfied with Defense Counsel's representation. Defendant responded: "Well, I wanted a jury trial and she talked me into just having [the court] take care of it. . . . I didn't want to and she talked me into it."

## II. Standard of Review

As Defendant concedes, because he did not lodge an objection with the trial court to being tried without a jury, we may only review his complaint for possible plain error relief under Rule 30.20. Rule 30.20; *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006). We will do so only if we find that Defendant has established that a manifest injustice or miscarriage of justice has resulted. *Id.*

## III. Discussion

Defendant contends the trial court plainly erred by proceeding to trial without a jury because: 1) the trial court did not personally examine him about his signed,

written jury trial waiver; 2) "the record does not show that [Defendant] heard or understood what was being said"; and 3) "although [Defendant] signed a written waiver, [Defendant] cannot read or write, and [Defendant] complained at sentencing that he wanted a jury trial but defense counsel 'talked [him] into just hav[ing] [the trial court] take care of it.'"

Rule 27.01(b) provides:

The defendant may, with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury. In felony cases such waiver by the defendant shall be made in open court and entered of record.

"Under the constitution and Rule 27.01(b) the waiver must appear in the record with 'unmistakable clarity.'" *Baxter*, 204 S.W.3d at 653. The waiver must be "voluntarily, knowingly and intelligently made." *State v. Sharp*, 533 S.W.2d 601, 605 (Mo. banc 1976). The waiver is not required to be in writing, but that is the preferred method. *State v. Ramirez*, 143 S.W.3d 671, 675 (Mo.App. W.D.2004). "Although some cases have found that failure to examine the defendant on the record was plain error, 'it does not follow that the trial court's failure to do so necessarily results in a reversal of [the] conviction.'" *Baxter*, 204 S.W.3d at 653 (quoting *State v. Hatton*, 918 S.W.2d 790, 795 (Mo. banc 1996)). The "case turns on whether there are facts in the record that demonstrate that the defendant's waiver was knowing, voluntary, and intelligent." *Id.* at 654.

Defendant relies heavily on this court's decision in *State v. Mitchell*, 145 S.W.3d 21 (Mo.App. S.D.2004). In *Mitchell*, defendant's attorney filed a letter with the court prior to trial which indicated that he and his client had conferred about the matter

and had decided to have the case tried to the court without a jury. *Id.* at 23. On appeal, the defendant contended his attorney's statement in the letter was inadequate on its face to waive his right to a jury trial and that the trial court failed to ascertain on the record that the defendant knowingly and intelligently authorized such a waiver. *Id.* at 24. This court agreed and granted the defendant a new trial, noting there was "nothing in the record to evidence that [the defendant] was ever advised of his right to a jury trial, the effects of such a waiver, or even any type of affirmative statement by [the defendant] regarding a waiver." *Id.* Further, the court stated that although " 'the record reflects that ... trial counsel waived the right to a jury trial, the [defendant] never expressly waived, on the record, his right, either in writing or orally.' " *Id.* (quoting *Luster v. State*, 10 S.W.3d 205, 212 (Mo.App. W.D.2000)).

Defendant contends that "although [Defendant's] name was signed to a written waiver, the record also showed that [Defendant] could not read nor write" and that "while a waiver was touched upon by the trial court and [Defense Counsel] in [Defendant's] presence, the record also showed that at times [Defendant] had a hard time hearing the proceedings." Further, Defendant avers that his case "only differs from *Mitchell* in that [Defendant's] signature appears on a written waiver, which the record reflects [Defendant] was unable to read."

■ While we disagree with Defendant's assertion that the only difference between *Mitchell* and this case is that Defendant's signature appears on the writ-

ten waiver, we do find Defendant's signature very significant. In the instant case, Defendant signed a written waiver that indicated he had "been advised by counsel of his right to trial by jury" and that he "waive[d] his right to trial by jury in this case." Unlike in *Mitchell* where only "trial counsel waived the right to a jury trial," here, Defendant signed a written document that waived his right to a jury trial. 145 S.W.3d at 24. As a result, Defendant expressly waived, on the record and in writing, his right to trial by jury. *See State v. Butler*, 415 S.W.2d 784, 785 (Mo. banc 1967) (finding nothing in the record to impeach the memorandum of waiver signed by defendant and his attorney waiving defendant's right to trial by jury); *State v. Turnbough*, 604 S.W.2d 742, 746 (Mo.App. E.D.1980) (finding that the waiver signed by counsel and the defendant indicating the defendant waived jury proceedings and was aware of his right to jury trial was effective despite not being signed by the judge).

■ Further, Defendant's contention that this waiver should be considered invalid because the record establishes Defendant cannot read or write is without merit. First, there is no requirement that Defendant know how to read or write to waive a trial by jury. Instead, the waiver must be "voluntarily, knowingly and intelligently made." *See, e.g., Sharp*, 533 S.W.2d at 605. Here, in accordance with the preferred method, the waiver was submitted to the court in writing. *See Ramirez*, 143 S.W.3d at 675. And while the trial court did not directly examine Defendant about his written waiver,[2] it did ask Defense Counsel, in Defendant's presence, if she

**2.** It is recommended that the trial court question the defendant directly. *See Baxter*, 204 S.W.3d at 655 ("The best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right.").

had discussed the matter with Defendant and if it was Defendant's intent to waive trial by jury. Defense Counsel responded in the affirmative and Defendant said nothing to contradict that response.

Other evidence in the record suggests Defendant was not only capable of understanding what was read or discussed with him, but that he was also able to indicate his understanding by singing or initialing. At trial, Deputy Pam Buchanan ("Deputy Buchanan") testified that she was present when another deputy, Deputy Poynor, read Defendant the *Miranda*[3] warnings. She testified that the warnings were read from a departmental form and that Defendant initialed each sentence of those warnings, indicating that he understood each sentence, and then signed the form at the bottom.

Defendant testified that the *Miranda* warnings were read to him by Deputies Buchanan and Poynor, but when the State attempted to show Defendant the *Miranda* departmental form, Defendant interrupted the prosecutor and stated that he could not "read or write." Defendant then stated he did not know if the deputies read the form to him. The prosecutor then went over each of the rights set forth in the form and Defendant admitted that the deputies read each of them to him and that he then initialed each one after it was read to him.

■■■ Deferring to the trial court's ability to see, hear and judge Defendant's abilities and reactions in person, *State v. Shaw*, 847 S.W.2d 768, 779 (Mo. banc 1993), it

could have determined that Defendant was able to hear and understand and use his signature or initials to indicate his understanding—whether or not Defendant could actually read or write. The trial court could also have disbelieved Defendant's assertion that he was unable to read or write. Such credibility matters are to be determined by the trial court. *State v. Ball*, 113 S.W.3d 677, 679–80 (Mo.App. S.D.2003). Defendant has failed to establish that his written waiver was invalid.

Defendant further suggests that because the record shows Defendant had trouble hearing during different points of the trial, we should infer that Defendant did not hear the colloquy between Defense Counsel and the court regarding his decision to waive his right to a jury trial. The record actually refutes such a claim. During the trial, Defense Counsel told the trial court on two separate occasions that her client was having difficulty hearing a witness's testimony. On each of these occasions, the court told Defense Counsel that Defendant could move to a spot where Defendant could better hear. After Defendant moved, no further complaints were made.[4] Defendant does not point to any instance where the record indicates he was having any difficulty hearing the trial judge and does not even directly claim that he was unable to hear the pre-trial exchange between the court and Defense Counsel about his decision to waive his right to a jury trial. Defendant has failed to establish that he was unable to do so.

---

**3.** *Miranda v. State*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** The record indicates that the courtroom was equipped with an assisted listening device, but the trial court and prosecutor expressed that they were "clueless" as to how to use it. A portion of the transcript seems to suggest that a third party was going to be asked if she was familiar with the operation of the device, but it is unclear from the record whether that device was ever actually used. We suggest that the court become familiar with the proper operation of the device and seek any necessary assistance from the Office of State Courts Administrator.

Furthermore, when the parties appeared to hear the court render its verdict, Defendant voiced no complaints about his trial. In fact, the first time Defendant said anything about having wanted a jury trial occurred over a month-and-a-half later when he learned what his sentence was going to be.[5] Even then, Defendant did not claim that he had not been advised of his right to a jury trial or about the effects of waiving that right. Instead, Defendant stated that he "wanted a jury trial and [Defense Counsel] talked [him] into just having [the court] take care of it." This statement indicated that Defendant had been informed of his right to a jury trial, that he understood that right, but that he chose not to exercise it based on the advice of his counsel. Though in retrospect Defendant may have been unhappy with the results of his decision, his statement reveals that he knowingly, voluntarily, and intelligently waived his right to trial by jury. *See Baxter*, 204 S.W.3d at 654 (relying on two factors in finding that the jury trial was effectively waived, including whether the defendant alleged "that he was not informed of the right by trial counsel, that he did not understand the right, that he did not voluntarily waive the right, or that he would have asserted the right if questioned by the judge").[6]

While it is recommended that the trial court personally examine any defendant who is expressing an intent to waive his or her right to a jury trial, the fact that the court failed to do so here does not mean plain error occurred. *See id.* at 655. The record before us demonstrates with sufficient clarity that Defendant knowingly, intelligently, and voluntarily waived his right to a jury trial. "Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it." *Ramirez*, 143 S.W.3d at 677 (quoting *Sharp*, 533 S.W.2d at 605). Defendant has failed to establish that any manifest injustice or miscarriage of justice occurred in regard to the trial court's acceptance of his decision to waive his right to a jury trial. No plain error occurred. The judgment is affirmed

LYNCH, C.J., PARRISH, J., Concur.

---

5. At the beginning of the sentencing hearing, Defense Counsel did tell the court that Defendant "has trouble hearing."

6. It is not clear from the record whether the second factor the Court relied on—whether the defendant "and the prosecutor struck a bargain for lesser charges in exchange for the waiver"—applies in this case. Defendant was originally charged by information with two counts of statutory rape in the first-degree, but just prior to the start of trial the State informed the court that it was only proceeding on one count. *Id.*