The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Troy MONTOYA, Defendant–Appellant.

No. 08CA1322.

Colorado Court of Appeals, Div. I.

March 4, 2010.

As Modified on Denial of Rehearing June 10, 2010.

John W. Suthers, Attorney General, Alice Q. Hosley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.*

Defendant, Troy Montoya, appeals his conviction, following a bench trial, of sexual assault on a child. The sole issue in this direct appeal is the proper construction of amended Crim. P. 23(a)(5)(II), which requires the trial court to advise the defendant of certain rights before accepting a waiver of a jury trial. Defendant contends that the trial court's advisement in this case did not comply with the amended rule, because the trial court did not conduct an on-the-record colloquy to determine whether his waiver was made knowingly, voluntarily, and intelligently, and therefore, that his jury trial waiver was invalid. He seeks a new trial before a jury.

We agree the advisement was deficient under the rule, but we conclude the appropriate remedy is to remand the case to the trial court, pursuant to *People v. Blehm,* 983 P.2d 779, 792 (Colo.1999), for an evidentiary hearing to resolve defendant's challenge to the validity of the waiver of jury trial.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

## I. Background

The charge arose from one incident that occurred in early 2004, when the victim was ten years old and was living with her mother and defendant, who was her mother's boyfriend.

According to the undisputed evidence, defendant had suffered epileptic seizures for years, and during March 2004, the victim saw him having an episode in the front yard when she returned from school. She testified that she helped him inside the house, watched him until he could walk on his own, and then went into her room to watch a movie.

According to the victim, while she was lying on the bed with her clothes on, but under the covers, defendant asked if he could watch the movie with her. He then lay down next to her on the bed, eventually got under the covers with her, and touched her on her buttocks, breasts, and vagina over her clothes. She testified that he did not say anything but "just looked at" her and "grumbled." She reported that she got out of bed and went upstairs, and that he did not follow her. She telephoned her older sister, told her what had happened, and waited in the kitchen until her sister came home. She asked her sister to keep it a secret.

Approximately two years later, the victim sent a text message to a friend stating that defendant had molested her. The friend's mother informed a school counselor, who called the police, and in May 2006, defendant was arrested and charged with one count of sexual assault on a child. He denied that he knowingly molested the victim and maintained that any touching that occurred was due to involuntary movements during or immediately following his epileptic seizure.

At the bench trial, he presented an expert in the area of epileptic seizures who testified that (1) defendant suffered from two kinds of seizures of the temporal lobe; (2) some of the seizures were "grand mal" seizures, and some were smaller ones that built up slowly and imperceptibly; (3) during these seizures, defendant would grab other people but would

§ 24–51–1105, C.R.S.2009.

not be aware of the touching; (4) one symptom of such seizures is a type of amnesia about what occurs during the seizures; and (5) if defendant had touched the victim during a seizure, he would not have been aware of the touching. Defendant also presented an exhibit, admitted by stipulation, of a sex offense evaluation which stated that "[defendant] did not present with any sexual self-regulation deficits," that he had no history of "paraphilic behavior in general and any sexual contact with children specifically," and that no "grooming behaviors" were present. The trial court found defendant guilty and entered judgment accordingly.

## II. Standard of Review

The Colorado Rules of Criminal Procedure "are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Crim. P. 2.

■ We use principles of statutory construction when interpreting rules of procedure. *People v. Stanley,* 169 P.3d 258, 260 (Colo.App.2007). We first give the words of the rules their plain meanings, and if the language is "clear and unambiguous, we need not look further to determine their meaning." *Anheuser Busch, Inc. v. Indus. Claim Appeals Office,* 28 P.3d 969, 970 (Colo.App. 2001). "However, if the language of a rule is susceptible of different meanings, a court must attempt to ascertain the supreme court's intention in promulgating the rule so as to carry out its intended purpose." *Crawford v. Melby,* 89 P.3d 451, 453 (Colo.App. 2003).

■ Whether the waiver of a constitutional right is knowing, voluntary, and intelligent presents a mixed question of law and fact. *See Blehm,* 983 P.2d at 792 n. 9 ("Like all questions of fact, the trial court's factual findings underlying its determination of the validity of the waiver would be reviewable for clear error. The trial court's ultimate conclusion as to the validity of the waiver would be a question of law, and thus would be reviewable de novo." (citation omitted)) (addressing waiver of the defendant's right to

testify at trial). The words "intelligently" and "intentionally" are sometimes used interchangeably. *Id.* at 786 n. 4.

■ On appeal, the reviewing court must look at the advisement, and also weigh the totality of the circumstances in ascertaining the validity of the waiver. *See People v. Arguello,* 772 P.2d 87, 96 (Colo.1989) (addressing waiver of right to counsel); *Gore,* 955 A.2d at 6–7 ("Our task . . . is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused." (internal citation and quotation marks omitted)).

■ When, as here, a party has failed to object and preserve the issue in the trial court, we review for plain error. *Herr v. People,* 198 P.3d 108, 111 (Colo.2008); *People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005). Plain error is error that is so clear-cut and obvious that a competent district court judge should be able to avoid it without the benefit of objection. *People v. O'Connell,* 134 P.3d 460, 464 (Colo.App.2005); *cf. United States v. Vonn,* 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (concluding that unobjected-to error in trial court's guilty plea colloquy was reversible only upon a showing of plain error that affected the defendant's substantial rights, and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights); *see Mosly,* 672 N.W.2d at 901 (reversal is "not warranted on the basis of an unpreserved constitutional error unless the error was plain on the record and affected the defendant's substantial rights, that is, the error was prejudicial" (citing *People v. Carines,* 460 Mich. 750, 597 N.W.2d 130, 137 (1999))); *State v. Britt,* 286 S.W.3d 859, 864 (Mo.Ct.App.2009) (concluding there was no plain error where the defendant simply stated he "wanted a jury trial and [his defense counsel] talked [him] into just having [the court] take care of it"; defendant did not claim there was a failure to advise him of his

right to a jury trial or of the effects of waiving that right).

### III. Waiver of Constitutional Right to Jury Trial

The right to a jury is fundamental, *see Duncan v. Louisiana,* 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and is "a right considered one of the most important in our democracy." *Rice v. People,* 193 Colo. 270, 271, 565 P.2d 940, 941 (1977). The Sixth Amendment's guarantee of the right to trial by jury is applicable to the states under the Fourteenth Amendment. *Duncan,* 391 U.S. at 149, 88 S.Ct. 1444; *see Moreland v. Bradshaw,* 635 F.Supp.2d 680, 700 (S.D.Ohio 2009) *(certificate of appealability granted* Jan. 6, 2010). The right to a jury trial in a criminal case is personal and can only be waived by the defendant. *People v. Laeke,* —— P.3d ——, ——, 2009 WL 4069898 (Colo. App.2009) (citing *People v. Curtis,* 681 P.2d 504, 511 (Colo.1984)). Thus, a statement by defense counsel does not operate as a waiver. *Id.* at ——; *see Moore v. People,* 707 P.2d 990, 994–95 (Colo.1985).

Nevertheless, a criminal defendant has no constitutional right to waive the right to a trial by jury and have the case tried to the court. *People v. District Court,* 953 P.2d 184, 188 (Colo.1998); *People v. District Court,* 843 P.2d 6, 8 (Colo.1992) (Colorado Constitution does not give criminal defendants a constitutional right to waive jury trial); *see* § 16–10–101, C.R.S.2009 (the People have the right to refuse consent to defendant's waiver of the right to a trial by jury); *see also Singer v. United States,* 380 U.S. 24, 34, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (there is no unconditional federal constitutional right to trial by court; denying a defendant an absolute right to waive a jury merely results in the defendant receiving the constitutionally guaranteed jury trial).

The only constitutional requirement is that the jury trial waiver be made voluntarily, knowingly, and intelligently. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *see People v. Norman,* 703 P.2d 1261, 1271 (Colo.1985) ("Any such waiver is effective only if it is made understandingly, voluntarily and delib-

erately, and any conclusion that a valid waiver was made must be a matter of certainty." (citations omitted)); *People v. Porterfield,* 772 P.2d 638, 639 (Colo.App.1988) (concluding the defendant's signed, written waiver established a prima facie case it was effective, even though the trial court did not inform him "that a jury verdict must be unanimous and that the ultimate decision regarding waiver of a jury trial lies with the accused, not his counsel").

Whether there was a valid waiver of jury trial by an accused depends on the unique circumstances of each case. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Sowell v. Bradshaw,* 372 F.3d 821, 836 (6th Cir.2004) (a waiver satisfies the "voluntary, knowing, and intelligent" requirement, if the defendant "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge" (quoting *United States v. Sammons,* 918 F.2d 592, 597 (6th Cir.1990))); *Moreland,* 635 F.Supp.2d at 700.

### IV. Purpose of a Colloquy

Several federal and state courts have adopted rules, or have issued directives pursuant to their supervisory authority, endorsing "[s]ome form of a waiver colloquy." *See United States v. Lilly,* 536 F.3d 190, 197 (3d Cir.2008). The purposes of a colloquy were discussed in *United States v. Cochran,* 770 F.2d 850, 852 (9th Cir.1985):

> Conducting an adequate colloquy serves three purposes: (1) it more effectively insures voluntary, knowing and intelligent waivers; (2) it promotes judicial economy by avoiding challenges to the validity of waivers on appeal (as in this case) or in habeas proceedings; and (3) it emphasizes to the defendant the seriousness of the decision. Furthermore, retrospective inquiries to determine the validity of waivers are likely to be futile.

*Id.* (citations omitted).

Other appellate courts have refused to require a specific litany, but have stated that

"the better practice" is for the trial judge to inquire of the defendant on the record to be sure the waiver of a jury trial is knowing, voluntary, and intelligent, and have encouraged trial courts to do so. *See United States v. Carmenate,* 544 F.3d 105, 107–08 (2d Cir. 2008) ("[W]e strongly encourage the district court to give appropriate warnings and question a defendant on the record, especially where, as here, the defendant failed to sign a written waiver pursuant to Rule 23(a)(1) of the Federal Rules of Criminal Procedure.").

Despite the benefits to appellate courts of having a recorded colloquy between the trial court and the defendant in jury waiver cases, the overwhelming majority of federal and state courts, including those in Colorado, have held that such a colloquy is *not* constitutionally required. It is only "a procedural device" that assists the court in resolving the constitutional issue of whether a jury trial waiver is made knowingly, voluntarily, and intelligently. *State v. Feregrino,* 756 N.W.2d 700, 707–08 (Iowa 2008); *see Fitzgerald v. Withrow,* 292 F.3d 500, 504 (6th Cir.2002) ("Neither such an oral colloquy, nor any other particular form of waiver, is required for a valid waiver as a matter of federal constitutional law. Instead, by querying the defendant regarding his knowledge of the waiver's effect, the colloquy eases the task of reviewing courts in determining whether the waiver was knowingly and voluntarily undertaken for purposes of the Sixth Amendment." (citations omitted)); *Marone v. United States,* 10 F.3d 65, 67 (2d Cir.1993) ("A court is not constitutionally required to conduct an on the record colloquy with a defendant prior to a waiver of the right to a jury trial."); *Cochran,* 770 F.2d at 851 ("[T]he failure of a district judge to conduct such an interrogation does not violate either the Constitution or Fed.R.Crim.P. 23(a); nor does it ipso facto require reversal." (citations omitted)); *People v. Thompson,* 121 P.3d 273, 276 (Colo. App.2005) (rejecting the defendant's contention that a valid waiver of the right to jury trial presupposes extensive, on-the-record advisements, which are not constitutionally required for an effective waiver); *State v. Gore,* 288 Conn. 770, 955 A.2d 1, 12–14 (2008) (collecting cases); *Zinnerman v. State,* 985 So.2d 672, 674 (Fla.Dist.Ct.App.2008); *People*

*v. Rincon,* 387 Ill.App.3d 708, 326 Ill.Dec. 945, 900 N.E.2d 1192, 1200 (2008); *Hutchins v. State,* 493 N.E.2d 444, 445 (Ind.1986); *People v. Mosly,* 259 Mich.App. 90, 672 N.W.2d 897, 901 (2003) ("Although the trial court clearly failed to comply with the oral waiver procedure set forth in [Michigan Court Rule] 6.402(B), we are not persuaded that the trial court's failure to follow the rule requires reversal if the record establishes that defendant nonetheless understood that he had a right to a trial by jury and voluntarily chose to waive that right."); *State v. Hassan,* 108 P.3d 695, 699–700 (Utah 2004); *State v. Conn,* 152 Vt. 99, 565 A.2d 246, 248 (1989).

In *Feregrino,* 756 N.W.2d at 707–08, the Iowa Supreme Court construed a local rule of criminal procedure providing that "[c]ases required to be tried to a jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and on the record." The prosecution there conceded the trial court failed to comply with the procedural requirements of the rule, but the Iowa Supreme Court refused to order a new trial, stating:

> Nothing in this opinion undercuts the salutary purpose of [the rule], which is designed to ensure that a defendant is informed of his right to a jury trial and to create a clear record with respect to any waiver. We hold only that a violation of [the rule] does not, in and of itself, mean that there has been a deprivation of the constitutional right to a jury trial.
>
> . . . .
>
> [W]hether there has been such an alteration of the fundamental trial framework in violation of the defendant's right to a jury trial depends on . . . whether, notwithstanding the violation of the rule, the defendant knowingly and voluntarily waived his right to a jury trial. The antecedent question of whether a defendant knowingly or voluntarily waived a jury trial presents a question of historical fact. It does not require the court to speculate on whether the outcome in the case would have changed if a different fact-finding process, namely, trial to a jury, had occurred.

*Id.* at 707–08 & n. 3. The court concluded that the record was inadequate, and that the factual issue would have to be resolved in a postconviction proceeding.

## V.  Requirements of Crim. P. 23(a)(5)

Crim. P. 23(a)(5) was amended by the Colorado Supreme Court, effective January 1, 2007, and was in effect at the time of defendant's purported waiver in this case. The current rule, as relevant here, contains the following language (with the 2007 additions in italics):

(I) The person accused of a felony or misdemeanor may, with the consent of the prosecution, waive a trial by jury in writing or orally in court. Trial shall then be to the court.

*(II) The court shall not proceed with a trial to the court after waiver of jury trial without first determining:*

*(a) That the defendant's waiver is voluntary;*

*(b) That the defendant understands that:*

*(i) The waiver would apply to all issues that might otherwise need to be determined by a jury including those issues requiring factual findings at sentencing;*

*(ii) The jury would be composed of a certain number of people;*

*(iii) A jury verdict must be unanimous;*

*(iv) In a trial to the court, the judge alone would decide the verdict;*

*(v) The choice to waive a jury trial is the defendant's alone and may be made contrary to counsel's advice.*

■  The amended rule does not expressly require that the inquiry and waiver be made on the record, and therefore, the rule is ambiguous on this point. If the language of a rule is susceptible of different meanings, a court must attempt to ascertain the supreme court's intention in promulgating the rule so as to carry out its intended purpose. In doing so, the court may consider not only the language of the rule, but also the reason and necessity of the rule and the objective

that the rule seeks to accomplish. *Crawford,* 89 P.3d at 453.

The transmittal letter sent on behalf of the Colorado Criminal Rules Committee to the Colorado Supreme Court explained the purpose of the proposed rule to the court and offers us considerable guidance. *See* Letter of May 23, 2006, from Steven K. Jacobson, Member, Colorado Criminal Rules Committee, to Honorable Alex Martinez, Colorado Supreme Court (on file in the Colorado State Court Administrator's Office). The letter explained the problems arising from the "limited colloquy [that] routinely happens in our courts" and referred to rules and case law in several other states that "provided for effective records relating to jury trial waivers by requiring a colloquy between the court and defendant." The committee observed that the supreme court had already required an on-the-record colloquy in cases where defendants waive their right to testify at trial.

It is apparent the committee believed that compliance by trial courts with the amended rule would prevent, or significantly minimize, belated assertions by defendants that their jury trial waivers were not made knowingly, voluntarily, and intelligently, because the letter of transmittal states:

In *Curtis,* [681 P.2d at 515], the Court explained that "[t]he purposes of advisement by the court on the record are to ensure that waiver of a fundamental constitutional right is intelligent and knowing, to preclude postconviction disputes between defendant and counsel over the issue, and to facilitate appellate review." This Court in *Curtis* also noted, "To establish intelligent, knowing waiver of a constitutional right, 'the best means of demonstrating the defendant's state of mind are his own declarations' on the record." The same is true of establishing an intelligent, knowing, and voluntary waiver of the right to a jury trial. *Using the defendant's own declarations on the record, in response to inquiries by the Court, will best establish a valid waiver and will not only contribute to judicial efficiency but will create a degree of finality in the proceedings and in the minds of the parties.*

(Emphasis added.) The supreme court adopted the amendment to Crim. P. 23 without changing the language proposed by the committee. The court also observed in *Blehm* that an on-the-record advisement "enable[s] the trial court's determination as to the validity of the waiver, and the basis for that determination, to be 'readily available on appeal.'" *Blehm,* 983 P.2d at 787 (quoting *Curtis,* 681 P.2d at 516).

■■■ We therefore conclude Crim. P. 23(a)(5)(II) was intended to require that trial courts conduct on-the-record advisements to defendants informing them of specific elements of their right to a trial by jury and of certain consequences if they waive that right.

### VI. Application to This Case

■■■ Defense counsel informed the court on the date of trial that defendant wanted to waive his right to a jury trial, and submitted a written waiver signed by defendant, his counsel, and the prosecutor. It stated: "Comes now the above-named Defendant, Troy Montoya, by and through his attorney . . ., and after being fully advised hereby waives his right for a jury." The trial court then conducted this colloquy with defendant:

Court: Mr. Montoya, do you understand under the Constitutions of the United States and the State of Colorado that you have an absolute right to have this case heard before a jury of your peers?

Defendant: Yes, Your Honor.

Court: And is it your desire this morning to waive the jury and to try this case to the Court?

Defendant: Yes, Your Honor.

Court: Is anybody forcing you or putting any undue pressure or coercion on you to get you to do this?

Defendant: No, Your Honor.

Court: Are you under the influence of any alcohol, drugs or medication which might affect your ability to understand what's going on today?

Defendant: No, Your Honor.

Court: Is this what you want to do?

Defendant: Yes, Your Honor.

Court: And have you had sufficient time to consult with your counsel . . . regarding this decision?

Defendant: Yes, Your Honor.

Defense Counsel: I would tell the Court we've been speaking of this prior to Thursday but serious[ly] from Thursday on, Your Honor. I've talked to numerous attorneys, and the error in not doing it Friday is mine, no one else's Your Honor. I just wanted the weekend to digest it.

Court: The Court will accept the Waiver of the Jury. We'll schedule this trial to the Court instead of the Jury.

This exchange between the trial court and defendant established that defendant understood he had a right to a jury, that he wanted to waive the jury and try the case to the judge, that no one pressured him to waive the jury, that he was not affected by drugs or alcohol when making this decision, and that he had consulted with his attorney before making his decision. The written waiver also stated that defendant was "fully advised," and that he waived his right to a jury. But the trial court did not determine whether he understood that his decision to waive a jury trial was his alone and could be made contrary to his counsel's advice; that the waiver would apply to all issues that might have been determined by a jury, including those requiring factual findings at sentencing; and that the jury would have consisted of twelve persons who would be required to reach a unanimous verdict, whereas in a trial to the court, the judge alone would decide the verdict, all of which are required by the amended rule.

In view of these deficiencies, we conclude, contrary to the People's contention, that the trial court did not substantially comply with Crim. P. 23(a)(5)(II)(b). Nor did the omissions in the advisement merely constitute a "slip-up" by the trial court. *See Vonn,* 535 U.S. at 62, 122 S.Ct. 1043 (noting that the harmless error rule "has evolved over the course of 30 years from general scheme to detailed plan, which now includes a provision for dealing with a slip-up by the judge"). Rather, here, the error was clear-cut and obvious, and could easily have been avoided by consulting the text of the amended rule,

which became effective on January 1, 2007. The jury trial in this case commenced on April 7, 2008. *See O'Connell,* 134 P.3d at 464 (defining plain error).

■ However, we reject defendant's contention that the advisement was deficient because the trial court did not advise him of the possible penalties upon conviction. The rule does not require such an advisement and we disagree that one is necessary.

In *People v. Bannister,* 232 Ill.2d 52, 327 Ill.Dec. 450, 902 N.E.2d 571 (2008), the defendant attempted to equate a jury waiver with a plea of guilty. The Illinois Supreme Court was not persuaded, recognizing that while "sentencing is a consequence of the acceptance of a guilty plea," it "is not a consequence of the election to waive a jury trial." *Id.* at 582 (quoting *Horsman v. State,* 82 Md.App. 99, 570 A.2d 354, 357 (Md.Ct. Spec.App.1990)). The *Bannister* court added: "A defendant who pleads not guilty receives a full and fair trial before either a jury or the court sitting without a jury. Regardless of who serves as the trier of fact, the defendant's possible sentences would be the same." *Id.* at 583.

■ The defendant's lack of knowledge about the possible penalties may arguably be a relevant factor in determining whether there was a valid waiver, but we agree with the committee's position, expressed in its transmittal letter to the supreme court, that "the advisement should be limited to addressing matters that are constitutionally based—those that go directly to the 'nature of the right ... and the consequences of waiving that right'" *Id.* (quoting *United States v. Robertson,* 45 F.3d 1423, 1432 (10th Cir.1995)).

### VII. Remedy for a Rule Violation

■ We also reject defendant's position that the remedy for the deficient advisement is the reversal of his conviction and an order granting him a new trial before a jury.

■ The amended rule serves the important purposes of ensuring that a defendant is informed of his or her right to a jury trial and creating a clear record with respect to any waiver. But we agree with the numerous courts that have concluded that there is no federal constitutional right to any particular colloquy, and that a violation of the rule requiring an advisement or colloquy does not, in and of itself, mean there has been a deprivation of the constitutional right to a jury trial. We also perceive no basis for concluding our supreme court intended that the procedural protections in the amended rule confer upon criminal defendants a previously unrecognized state constitutional right. *See United States v. Boynes,* 515 F.3d 284, 286 (4th Cir.2008) ("Although we reiterate our view that it is much preferable for a district court to insure itself on the record before accepting the defendant's jury waiver, it is not a constitutional imperative. The constitutional imperative is this, no less and no more: the waiver must be knowing, intelligent, and voluntary."); *Feregrino,* 756 N.W.2d at 708 n. 3; *Mosly,* 672 N.W.2d at 901.

In *Blehm,* the Colorado Supreme Court modified the *Curtis* procedures by (1) requiring that a defendant's challenges to an improper *Curtis* advisement be raised in a post-conviction proceeding; and (2) permitting "off-the-record" evidence to be considered in determining the validity of a defendant's waiver of the right to testify. *Blehm,* 983 P.2d at 791. The supreme court recognized that "[u]nder the [existing] *Curtis* framework of appellate review," an appellate court had "no mechanism" to weigh the evidence, to determine the credibility of witnesses, or to ascertain the defendant's understanding in waiving his or her right to testify. This was because *"Curtis'* limitation of review to direct appeal [had] excluded fact-finding hearings in precisely those cases where facts outside the record may be crucial to understanding whether the defendant knowingly and intelligently waived his right to testify (i.e., in those cases where the trial court advisement is deficient in some way)." *Id.* at 791–92.

■ We perceive no reason why the same procedure should not be followed in cases where, as here, the defendant is challenging the validity of a jury trial waiver. The Crim. P. 35(c) procedure mandated by *Blehm* contemplates an evidentiary hearing that will

allow the trial court to resolve factual disputes. Indeed, a motion for postconviction relief pursuant to Crim. P. 35(c) may be denied without an evidentiary hearing only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief. Crim. P. 35(c)(3); *Ardolino v. People,* 69 P.3d 73, 77 (Colo.2003); *see also White v. Denver Dist. Court,* 766 P.2d 632, 636–37 (Colo.1988).

Here, we have concluded the trial court advisement was insufficient, but the record does not disclose whether defendant may have received a full advisement under Crim. P. 5 at his first appearance, or whether he had received other relevant information that would bear on the issue of the waiver. *Cf. People v. Gresl,* 89 P.3d 499, 502 (Colo.App. 2003) (although the defendant was not advised by the court regarding the range of sentences that could be imposed upon entry of his guilty plea, division concluded the prosecutor's statement at the hearing that the defendant could be sentenced to up to sixteen years in prison for the charge to which he pled guilty compensated for any deficiency in the court's advisement). Although defendant's attorney filed a written waiver with the court which stated that defendant was "fully advised," it is not clear what his attorney actually told defendant, but that can be clarified at the evidentiary hearing.

The Crim. P. 35(c) procedure required by *Blehm* also avoids piecemeal litigation by requiring that a defendant raise all relevant issues in one postconviction proceeding. In his reply brief on appeal, defendant stated that he was not challenging the effectiveness of his counsel on direct appeal because "the law makes clear he must [raise that issue] in a postconviction motion." On remand, defendant may raise such grounds in the postconviction proceedings, and if he does so, the *Blehm* procedure will give him an opportunity to show the requirements of *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), were not met.

■ In postconviction proceedings, the legality of the judgment and the regularity of proceedings below are presumed, and the burden is on the defendant to establish his or her allegations by a preponderance of the evidence. *Lamb v. People,* 174 Colo. 441, 446, 484 P.2d 798, 800 (1971); *People v. Firth,* 205 P.3d 445, 449 (Colo.App.2008).

■ Before the trial court can find a defendant's waiver of the right to a jury trial was constitutionally invalid and warrants a new trial, the defendant must establish prejudice by showing that (1) if there had been a proper advisement, he would not have waived the jury; and (2) therefore, the deficient advisement resulted in a waiver that was not made knowingly, voluntarily, or intelligently. *See Thompson,* 121 P.3d at 275; *Porterfield,* 772 P.2d at 639 (rejecting the defendant's argument, raised for the first time on appeal, because "he neither claim[ed] that he actually lacked the information necessary to make a valid waiver, nor does he claim that his waiver resulted from the failure of counsel to advise him fully"); *cf. Gresl,* 89 P.3d at 503 ("[D]efendant here was required to demonstrate that, but for counsel's alleged dereliction, he would not have pleaded guilty."); *People v. Garcia,* 815 P.2d 937, 943 (Colo. 1991) (concluding the proper standard for resolving the issue of prejudice based on the ineffective assistance of counsel in advising the defendant about the consequences of a guilty plea is whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985))).

In *Blehm,* the court also made a distinction between cases that were then pending on direct appeal and other cases. The court held that, in all cases not then pending on direct appeal, defendants challenging the validity of the waiver of the right to testify were required to do so by filing a motion pursuant to Crim. P. 35(c). The court added:

> With respect to ... a defendant who has raised a claim of invalid waiver in his direct appeal, the appellate court should determine the sufficiency of the trial court advisement. If the appellate court concludes that the advisement is deficient, the appellate court should remand the case for

an evidentiary hearing in which the trial court determines the validity of the defendant's waiver of the right to testify.

*Id.* at 792.

We have concluded in this direct appeal that the advisement given to defendant by the trial court was deficient under the amended rule, but we cannot determine on the record before us whether defendant suffered substantial prejudice as a result of the deficiency. Thus, pursuant to the directive in *Blehm,* 983 P.2d at 792, we are required to remand the case to the trial court with directions to conduct an evidentiary hearing to resolve the validity of defendant's waiver. The evidentiary hearing on remand will have the same effect as a hearing on a postconviction motion filed pursuant to Crim. P. 35(c). But in all cases not now pending on direct appeal, defendants challenging the validity of the waiver of the right to jury trial are required to do so by filing a motion pursuant to Crim. P. 35(c). *Id.*

### VIII. Constitutional Challenge

Defendant next contends his right to due process has been violated because the Colorado courts afford less protection to the right to a jury trial than to the right to counsel.

We have jurisdiction to address a challenge to the constitutionality of a rule promulgated by the Colorado Supreme Court, *see People in Interest of T.D.,* 140 P.3d 205, 210–11 (Colo.App.2006), but defendant did not raise this constitutional issue in the trial court, and we normally do not consider such issues for the first time on appeal. *See People v. Brown,* 70 P.3d 489, 494 (Colo. App.2002); *cf. People v. Shepherd,* 43 P.3d 693, 701 (Colo.App.2001) (an appellate court

will not consider constitutional challenges to statutes raised for the first time on appeal); *but see People v. Tillery,* 231 P.3d 36, 47 (Colo.App.2009) (reviewing the defendant's unpreserved double jeopardy error and supplemental assertions for plain error under Crim. P. 52(b)).

Defendant may raise the issue in the trial court on remand.

### IX. Validity of the Sentence

The People contend the sentence imposed on defendant was illegal because it did not follow the mandatory provisions of the Colorado Sex Offender Lifetime Supervision Act, § 18–1.3–1004(2)(a), C.R.S.2009 (requiring that a defendant who is convicted of a class 4 felony sex offense be sentenced to a minimum of an indeterminate period of probation of ten years to life). But the People failed to cross-appeal, and we conclude the issue was not properly raised in this court. On remand, the trial court may address it.

The case is remanded to the trial court with directions to conduct an evidentiary hearing resolving defendant's challenge to the validity of his waiver of jury trial, and for such further proceedings as the trial court deems appropriate and in accordance with the views expressed in this opinion.

Judge TAUBMAN and Judge ROY concur.