STATE of Missouri, Respondent,

v.

Miguel A. RAMIREZ, Appellant.

No. WD 62996.

Missouri Court of Appeals,
Western District.

Sept. 14, 2004.

Andrew A. Schroeder, Kansas City, MO, for appellant.

Deborah Daniels, Assistant Attorney General, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, JAMES M. SMART, JR., Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Miguel A. Ramirez ("Appellant") was charged by amended information with one count of domestic assault in the first de-

gree, § 565.072, RSMo 2000, a class B felony. After a bench trial, he was found guilty and sentenced to serve a term of eight years of imprisonment in the custody of the Missouri Department of Corrections. In this direct appeal, Appellant contends that the trial court plainly erred when it accepted his request for a bench trial in that the record shows that the court failed to ascertain with unmistakable clarity that Appellant's waiver of his right to a jury trial was voluntary, knowing, and intelligent.

Appellant does not contest the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the trial court's findings and judgment of conviction, the facts adduced at trial were as follows. In July 1999, Appellant started dating Michelle Abron ("Abron"). They continued to date for about a year and a half, but broke up about eight to nine months before the events leading to Appellant's conviction. In the early morning hours of February 25, 2002, about a year after Appellant and Abron had broken up, Abron encountered Appellant at Jimmy's Steakhouse, a restaurant located at 29th and Prospect in Kansas City, Missouri. While inside the restaurant, Appellant made eye contact with Abron. Abron was afraid of and felt threatened by Appellant since he had hit her several times in the past. After receiving the food she had ordered, Abron decided to leave, telling her female friend, with whom she had spent the evening up to that point, that Abron would wait for her outside in the car. This was around 1:45 a.m., and Jimmy's Steakhouse closes at 3:00 a.m.

Abron left the restaurant and went out to the car, which was parked across the street from Jimmy's Steakhouse and belonged to her father. She noticed that Appellant's car, which was distinctive because it was a white Chevy Lumina with two blue doors, was parked right behind her car. As Abron was putting her food into her father's car, Appellant grabbed her from behind and threw her to the ground face down. Appellant, who was wearing cowboy boots, explained that he loved her too much to allow anyone else to be touching or looking at her. Although she was trying to cover her head with her arms, Appellant subsequently kicked Abron several times in the face and head, striking a solid blow to the area surrounding her right eye.

Abron screamed, forcing Ramirez to relent long enough for her to crawl into the car and lock the door. Appellant then began beating on the car window and demanding that she drive herself to his apartment. Abron told Appellant that she had her father's car and that she needed to take it back home to him, but Appellant continued beating on the window, saying that he would "fuck that car up" if she did not go to his apartment. Abron, who was "scared to death" at this point, acceded to Appellant's demand, and Appellant followed close behind in his car, speeding up whenever she would speed up and going in whatever direction she went.

When she arrived in the driveway outside Appellant's apartment, Appellant got out of his car and again began banging on the window of Abron's vehicle, demanding that she open the door or else he'd really "fuck this car up." When she complied, Appellant dragged her out of the car by her arm and began striking her on the head with his fists. Although she briefly escaped his grip and tried to run away, Appellant caught her and pulled her into his apartment by her left arm. In an effort to forestall further attacks, Abron told Appellant that she loved him, didn't want to be with anyone else, and would always want him.

Appellant took Abron's purse and car keys and pushed a couch up against the front door to his apartment. He then treated the victim's injuries with a towel to stop the bleeding from her nose, mouth, and right eye, an ice pack to reduce the swelling around her right eye, and some Tylenol to ease the pain. Abron then told Appellant she needed to go to the hospital, but Appellant told her: "No. You are not going nowhere." Appellant then offered to give Abron $300.00 in cash, to "make things all right" between them. At about 2:00 a.m., when Appellant briefly went into another room, Abron called her daughter Drachele and quickly said, "He got me. He got me," before hanging up. Drachele testified that her mother's voice sounded as if she was terrified, scared, or nervous. Drachele stated, "She [Abron] was a little whispering like she was scared and distressed."

When Appellant returned to the room, he continued to tend to Abron's injuries. He then took Abron into the bedroom and held her down on the bed, in which he was also laying. Abron eventually fell asleep, and when she woke up at about 8:00 a.m., she noticed that Appellant had just gone to the rear of the apartment, which had a back exit. She quickly grabbed her shoes, coat, purse, and keys, which were located in various places around the front room, pushed the couch out of the way, ran out to her car in the driveway, and drove to her father's house. After running into her father's house and washing up, Abron was taken to the hospital by Drachele. At the hospital, in addition to facial cuts and bruises, an X-ray revealed that the orbital bone around Abron's right eye was fractured and that she had also suffered damage to her legs and the tendons in her right shoulder. These injuries resulted in long-term impairment—numbness in her right arm and deteriorating vision in her right eye. Hospital personnel called the police, and Appellant was arrested on June 13, 2002.

Appellant and his wife Rashel, whom he had married while still in jail awaiting trial in the case *sub judice*, both testified for the defense at trial. Appellant's theory of the case was that Abron was a spurned lover who had not been attacked by him, but was actually assaulted by Rashel during the course of a fight (initiated by Abron) between the two women that took place outside Jimmy's Steakhouse at about 1:15 a.m., and that he merely tried to break them up. Rashel testified that she struck and kicked Abron in defense of herself and Appellant, but did not report the altercation to police since she had an outstanding warrant for her arrest.

After reviewing all of the evidence, the trial court ultimately concluded that "Mr. Ramirez was the one involved in this incident, [and] that it did happen as Ms. Abron testified that it did." The court found Appellant guilty as charged, and on March 13, 2003, sentenced him to a term of eight years of imprisonment in the custody of the Missouri Department of Corrections. This court permitted Appellant to file a notice of appeal out of time, resulting in this appeal.

In his sole point on appeal, Appellant contends that the trial court plainly erred when it accepted his request for a bench trial in that the record shows that the court failed to ascertain with "unmistakable clarity" that Appellant's waiver of his right to a jury trial was voluntary, knowing, and intelligent, in violation of Rule 27.01 and his constitutional rights to a jury trial, to due process of law, and to a fair trial.

■■■■ " '[A] criminal defendant has a right to waive his constitutional right to a jury trial provided such waiver is voluntarily, knowingly and intelligently made.' "

*State v. Sharp*, 533 S.W.2d 601, 605 (Mo. banc 1976). As to that right, Rule 27.01(b) states:

> The defendant may, with assent of the court, waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury. In felony cases such waiver by the defendant shall be made in open court and entered of record.

"The requirement in the rule that the waiver, in cases of felonies, must be 'in open court and entered of record,' does not require that it be in writing, although it is preferred." *Luster v. State*, 10 S.W.3d 205, 210 (Mo.App. W.D.2000). Still, "[u]nder the Constitution and Rule 27.01(b), a waiver by the accused and an assent of the court must appear from the record with unmistakable clarity." *State v. Bibb*, 702 S.W.2d 462, 466 (Mo. banc 1985).

■ The record shows that on the day before trial was to begin, the trial court addressed Appellant on the record, in open court, as follows:

> THE COURT: We are going to take up CR02–03735, *State of Missouri v. Miguel Ramirez*. The other case that was scheduled today has pled out. So we are trying to arrange an appropriate time to start this trial. Come on up, Mr. Ramirez. Okay. We got ready for your trial today. Come on up.
>
> THE DEFENDANT: Okay.
>
> THE COURT: It looks like we are going to have to start the trial tomorrow morning. Okay?
>
> THE DEFENDANT: (Witness nods head.)
>
> THE COURT: Mr. Price [defense counsel] tells me you are waiving a jury trial. You want the case to be heard by me. Is that right?

> THE DEFENDANT: I don't know. Whatever you said.
>
> THE COURT: I can't hear you. You are going to try the case to me? You want me to decide the case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Not a jury?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Okay. That's what we are going to do. I think we will start tomorrow morning. Is there a plea offer?
>
> MS. SIPE: Yes, Your Honor.....

After a brief discussion about the terms of the plea agreement, a five-year deal which was evidently rejected by Appellant before the start of trial the following day, defense counsel informed the trial court that he had "relayed that [plea offer] to him [Appellant] also just a couple of minutes ago. Also we talked about waiving the jury trial and that the trial would be held before this Court. That's really all I have. I think I'm clear on that." The court's written trial minutes reflected the waiver as follows: "On February 11, 2003, came the attorney for the State, Robin Sipe, and defendant appeared in person and by attorney, John Price. Defendant waives trial by jury and requests a Court trial."

Since the record in this case clearly and unmistakably demonstrates that Appellant's waiver and the court's assent thereto were made in open court and entered of record and Appellant cites no authority to the contrary, there was no violation of Rule 27.01(b). *See generally State v. Northern*, 472 S.W.2d 409, 412 (Mo.1971).

The record also demonstrates that neither Appellant nor his counsel ever objected to or complained about proceeding without a jury at any time before, during, or after trial. To the contrary, Appellant appeared in open court and expressly

waived his right to a jury trial, affirmatively indicating that he wanted to have his case tried by the court rather than by a jury. Furthermore, this was done after Appellant had conferred with his attorney, who stated that he had discussed the issue with Appellant. And, in Appellant's oral motion for a new trial, there was no allegation that the trial court erred in proceeding without a jury. In fact, in requesting a new trial, defense counsel conceded that he had little legitimate reason to request one. Counsel stated: "We would request a new trial. We don't have any basis. We got a fair trial and got in all of our evidence." Nor was there any complaint, by Appellant or his counsel, at sentencing or at any other time prior to appeal. Appellant concedes that the error alleged in his point relied on was not properly preserved for review and requests review for plain error under Rules 29.12(b) and 30.20.

■ At the outset, we note that plain error review is intended to correct only "evident, obvious and clear error" that resulted in manifest injustice or miscarriage of justice. *State v. Bozarth*, 51 S.W.3d 179, 181 (Mo.App. W.D.2001). "[P]rejudice exists, under the 'plain error' rule, only where the error complained of impacts so substantially upon the rights of a defendant that manifest injustice or a miscarriage of justice will result if left uncorrected." *State v. Seibert*, 103 S.W.3d 295, 298 (Mo.App. S.D.2003).

■ In explaining why the Sixth Amendment prohibits a trial judge from directing a verdict for the prosecution in a jury-tried criminal case, the United States Supreme Court has noted: "Where that right [to a jury trial] is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." *Rose v.*

*Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 471 (1986). Consequently, in cases such as this, where a criminal defendant's right to trial by jury has allegedly been altogether denied by the State, the applicable standard of prejudice is not whether that denial was determinative of the ultimate outcome of the trial, but whether the defendant was convicted by the proper finder of fact. For this reason, we reject the State's claim that in order to demonstrate manifest injustice or a miscarriage of justice in such cases, "the appellant must show that the error was 'outcome determinative.' "

■ "[T]his Court may decline, within its discretion, claims of plain error that do not facially establish substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Rhodes*, 988 S.W.2d 521, 526 (Mo. banc 1999). In this case, Appellant's unpreserved claim of error does not facially establish substantial grounds for believing that plain error occurred. Therefore, under the circumstances presented in this case, we decline to review for plain error.

■ As held by the Missouri Supreme Court in *Sharp*, in order to be entitled to relief on direct appeal under the plain error rule, a criminal defendant claiming a denial of his right to trial by jury has the burden to show that his waiver thereof was not voluntarily, knowingly and intelligently made:

> [A] determination of guilt by a court after waiver of jury trial [cannot] be set aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made. If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice

and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it.

*Sharp,* 533 S.W.2d at 605 (*quoting Adams v. United States ex rel. McCann,* 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275–76 (1942)).[1] Thus, Appellant is not entitled to relief under the plain error rule unless we are convinced that his waiver of trial by jury was not voluntarily, knowingly and intelligently made, keeping in mind that he bore the burden of showing essential unfairness not as a matter of speculation but as a demonstrable reality. Moreover, as another prerequisite to plain error relief, Appellant must also show that, had he been adequately apprised of his right to trial by jury, "he would have insisted on having his guilt or innocence determined by a jury, rather than the trial court." *Luster,* 10 S.W.3d at 212. These are both required showings, because only if the waiver was invalid could Appellant's constitutional right to trial by jury have been abridged, and only if Appellant would otherwise have insisted on being tried by a jury could he have been prejudiced by having his guilt or innocence determined by a fact-finder he did not voluntarily choose.

In the case at bar, Appellant has failed to make either showing. In arguing this point in his brief, Appellant does not even allege, as a demonstrable reality rather than as a matter of speculation, that he did not make a voluntary, knowing, and intelligent waiver. As correctly noted by the State, Appellant does not allege that he

did not voluntarily waive his right to a jury trial (*e.g.,* that he was threatened or induced by false promises to do so); that he did not knowingly waive it (*e.g.,* that he was under the influence of drugs or alcohol when he did so); or that he did not intelligently waive it (*e.g.,* that he did not understand what he was giving up). Instead, Appellant only complains that the trial court should have conducted a more thorough inquiry before acceding to his request for a bench trial.

Likewise, as to the second required showing, Appellant alleges only that had he properly "understood the importance of being adjudged by twelve jurors of his peers, whose duty it would be to arrive at a unanimous verdict, it is doubtful that he would have waived that right" in favor of a trial by the court. But "doubtful" is not sufficient to convict the trial court of plain error. As explained *supra,* Appellant must show that he would *not* have waived his right to a jury trial had he been adequately apprised of his right to such a trial. Moreover, under the circumstances of this case, there is no reason to believe that Appellant was not properly informed of the role and duties of a jury, because the record clearly indicates that he was counseled by his attorney before making his decision. On this record, there simply is no basis for a finding that counsel's advice to Appellant on the waiver issue was deficient, particularly in light of the fact that "[a] strong presumption exists that trial counsel was effective and an appellant bears a heavy burden of overcoming that presumption[.]" *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996). Accordingly, since Appellant has failed to even allege, much less demonstrate, either of the two requirements set forth *supra,*

---

1.  *Sharp* involved the former Rule 27.20(c), *id.,* the substance of which is now found in Rules 29.12(b) and 30.20.

he is not even entitled to plain error review, much less plain error relief. Point denied.

The judgment of conviction and sentence for felony domestic assault in the first degree is affirmed.

All concur.