**STATE of Missouri, Respondent,**

v.

**Erma S. McKINNEY, Appellant.**

**No. WD 67614.**

Missouri Court of Appeals,
Western District.

May 20, 2008.

---

1. Statutory references are to RSMo 2000.

Nancy A. McKerrow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO; Shaun Mackelprang and Daniel N. McPherson, Office of Atty. Gen., Jefferson City, MO, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

Erma S. McKinney ("McKinney") appeals her conviction after a non-jury trial for one count of the class A felony of assault in the first degree, under section 565.050 [1]; the class B felony of abuse of a child, under section 568.060; and the class B and class C felonies of endangering the welfare of a child in the first degree, under section 568.045, RSMo Cum.Supp.2003. She argues, in her first point, that the evidence did not support a finding of guilt for the class B felony of endangering the welfare of a child because the State's evidence failed to prove that her actions against her child were part of a ritual or ceremony as required by the statute. In her second point, she attacks her conviction for first-degree assault contending that the evidence does not show that she knowingly caused serious physical injury to her son, as opposed to recklessly causing such injury. We find that her actions in repeatedly placing her son in a scalding hot shower as punishment for school misbehavior meets the definition of ritual or ceremony in section 568.060 and that the evidence does support a finding by the trier of fact that she knowingly caused serious injuries to her son.

The convictions are affirmed.

Viewed in the light most favorable to the verdict, the facts are as follows. McKinney lived with her son, E.C., the victim in this case, and the child's stepfather, Otis McKinney ("Stepfather"). While E.C. was in kindergarten, he had numerous emotional outbursts, became easily frustrated by his school work, and sometimes acted aggressively towards others. After discussions with school officials, McKinney and Stepfather worked out a system where the teacher would send a note home everyday about E.C.'s behavior. On a number of occasions when he came home with a bad note, McKinney and Stepfather took E.C. to the basement and placed him in a hot shower. Near the end of the school year, E.C.'s teacher noticed that he became nervous about going home and would often ask the teacher what was in the note and sometimes did not want to take the note home.

On May 19, 2005, E.C. appeared more upset than usual and started crying, wanting to know what his note said. He also told the teacher he did not want to get in a hot shower. She was unable to have him explain what he meant. That afternoon, after seeing the teacher's note, McKinney and Stepfather took E.C. to the basement and placed him in the shower. McKinney turned on the hot water. E.C. tried to get away from the water but Stepfather held the nozzle and sprayed hot water on him. E.C. yelled to get out of the shower but McKinney held the door shut.

E.C.'s back hurt that night. Both parents applied ointments to his back, but instead of helping, it increased his pain. E.C. never returned to school. McKinney told the school that he had chickenpox and the mumps. Stepfather worked at Rusk Rehabilitation Center and, in late May or early June 2005, asked how to treat the rash and itching that E.C. had. Despite offers to examine him, the parents did not take E.C. to Rusk until June 14, 2005. The examining doctor immediately determined that he needed to be sent to a hospital burn unit. A specialist found full-thickness burn injuries extending into the tissue under skin covering about 10% of

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

E.C.'s body. Ultimately, E.C. underwent debridement surgery and skin grafts. The burns resulted in pigment changes on his back and arms.

McKinney told emergency room officials and police detectives that E.C. had had the chickenpox and the mumps and had been treated at a local clinic. After police contacted the clinic, she admitted that she had been lying. She eventually admitted to the hot shower as punishment incident on May 19, 2005. She also told the police that she had given two previous shower punishments that would last about thirty minutes.

A counselor who treated E.C. diagnosed him with post-traumatic stress disorder and testified that the shower incident caused E.C. serious and permanent emotional injury. Other evidence indicated the possibility of previous untreated burns either thermal or chemical.

After waiving trial by jury, McKinney was convicted on all counts and now appeals.

### Standard of Review

The standard of review in a court—tried case is the same as in a jury—tried case. *State v. Todd,* 183 S.W.3d 273, 276 (Mo.App. W.D.2005). In determining whether there is sufficient evidence to support the conviction, this court accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the finding. *Id.* All contrary evidence and inferences are ignored. *Id.*

### The Evidence Supported a Finding that McKinney's Actions were Part of a Ritual or Ceremony as Defined in Section 568.045

McKinney was charged with violation of section 568.045, RSMo Cum.Supp. 2003 which provides in relevant part:

1.  A person commits the crime of endangering the welfare of a child in the first degree if:

    (1) The person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old;

    . . .

    . . . .

2.  Endangering the welfare of a child in the first degree is a class C felony unless the offense is committed as part of a ritual or ceremony, or except on a second or subsequent offense, in which case the crime is a class B felony.

McKinney cites to a number of dictionary definitions of the terms "ritual or ceremony" and argues that the evidence is insufficient to show that her punishment showers were part of a ritual or ceremony. She contends that there must be evidence of participation in some religious or sectarian group "which have as part of their beliefs particular rituals or ceremonies." She, thus, argues that her conviction for the class B felony of child endangerment should be reversed and remanded for resentencing as a Class C felony.

We disagree and see no need to resort to dictionary definitions of these terms. Nor do we need to look at the decisions of other states which define these terms. Our legislature provided its own definition. That definition is binding. *State v. Harris,* 156 S.W.3d 817, 822 (Mo. App. W.D.2005). Section 556.061(26), RSMo Cum.Supp.2003 states:

"**Ritual or ceremony**" means an act or series of acts performed by two or more persons as part of an established or prescribed pattern of activity[.]

Nothing in this definition suggests or supports a conclusion that the legislature in-

tended to only include practices that were prescribed only by religious or sectarian groups. Individuals are certainly capable of creating their own rituals. The evidence supports a conclusion herein that McKinney set up a practice of punishing E.C. for school misbehavior by placing him in a hot shower followed by cold water. It was predictable and established enough that even E.C. at his young age knew what to expect and dreaded it. Point denied.

### Evidence was Sufficient to Prove McKinney Knowingly Caused Serious Physical Injury

██ To convict for first degree assault, the State was required to prove that a person attempts to kill or "knowingly causes or attempts to cause serious physical injury to another person." Section 565.050.1. McKinney contends that the evidence only supports a finding that she recklessly caused physical injury. She does not contest the issue of serious physical injury. More specifically, she argues that there was no evidence that E.C. had been scalded or burned before the May 19, 2005, incident and that her attempts to treat his burns thereafter indicate her surprise at the consequences.

██ A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result. Section 562.016.3(2). Intent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts. *State v. Johnson,* 948 S.W.2d 161, 166 (Mo.App. E.D.1997). The fact-finder "is permitted to draw such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, part, or none of the testimony of any witness." *Id.* "The defendant's mental state may be determined from evidence of the defendant's

conduct before the act, from the act itself, and from the defendant's subsequent conduct." *Id.*

McKinney placed E.C. in a three square foot shower and turned on just the hot water and kept him under the hot water for thirty minutes. When he tried to avoid the water, Stepfather turned the nozzle to make sure that E.C. was sprayed. McKinney did not try to stop that but ensured that E.C. could not escape the scalding hot water by holding the shower door closed with her body. She did this even though E.C. was crying and yelling for his mother to open the door. The evidence also shows that the water heater was turned to the maximum setting for heat, despite a warning label that said that water temperatures over 125 degrees can cause severe burns and that children are among those at the highest risk of being scalded.

In *State v. Thomas,* 806 S.W.2d 138, 140–41 (Mo.App. S.D.1991), the defendant heated a baby bottle on the stove to the point where it melted, and then threw it into the bed with the child; the evidence was found sufficient to show the defendant knowingly caused serious physical injury. By the same token, it should be reasonably apparent that putting a child into a shower, turning on only the hot water, and forcing the child to stand under that hot water for thirty minutes is practically certain to result in severe burns.

Nonetheless McKinney argues that she was not aware that putting E.C. into a hot shower was practically certain to cause serious physical injury because she had previously put him into a shower without causing severe injuries. She initially came up with the idea of the shower punishment when E.C. "messed with" the shower knobs and she realized that the water burned him. She also told the police that the water was a hotter temperature on the last occasion than she had on the previous

occasions. She also ignored E.C.'s crying and screaming, and his attempts to avoid the water, which should have alerted her to the harm she was causing her son. Finally, she testified consistent with E.C.'s testimony, that after dousing E.C. with hot water, she would turn the water to cold to cool off the burning, showing a consciousness of the effects of her actions.

There was also evidence that E.C. had a scar that was consistent with a prior thermal burn that had healed. Although not directly linked to prior shower incidents, the fact-finder could reasonably have inferred that E.C. did suffer some injury in the prior shower incidents and that McKinney would thus have further notice of the danger involved in the shower punishments. That is particularly true when the evidence of the prior injury is combined with evidence at E.C.'s distress at school over the possibility of being sent home with a bad note, and his fear on the day at issue that he would be put in a hot shower. That evidence, taken together, could lead to a reasonable inference that E.C. had been injured in previous shower incidents. Point denied.

The judgment is affirmed.

HAROLD L. LOWENSTEIN, Judge, and THOMAS H. NEWTON, Judge, concur.