STATE of Missouri, Respondent,

v.

Faron R. COLLINS, Appellant.

No. SD 32516.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 14, 2013.

Margaret M. Johnston, of Columbia, MO, for Appellant.

Chris Koster, Attorney General and Shaun J. Mackelprang, Assistant Attorney General, of Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., C.J.

Following a bench trial, Faron R. Collins ("Collins") was convicted of driving while intoxicated ("DWI"), in violation of section 577.010,[1] and operating a motor vehicle while license revoked ("DWR"), in violation of section 302.321. Because Collins had three prior DWI convictions, Collins was found to be an aggravated offender under section 577.023. This appeal followed. We affirm the judgment of the trial court.

**Factual and Procedural Background**

Viewing the evidence in the light most favorable to the trial court's ruling, the evidence was as follows. On December 16, 2011, the State charged Collins, by "Information," with the class D felony of DWR (Count I), and the class C felony of DWI (Count II).[2]

In Count I, the State alleged Collins operated a motor vehicle on a highway on April 30, 2011, while his driver's license was revoked and that he knew his license was revoked. The State also alleged Collins' actions were punishable under section 302.321 and that he had prior convictions for DWR on July 1, 2002, and December 2, 2008.

In Count II, the State alleged Collins was driving while under the influence of alcohol. Furthermore, the State alleged Collins' actions were punishable under section 577.023 as he was convicted of a DWI on December 2, 2008, September 10, 1992, and April 18, 1992.

On August 1, 2012, in open court, Collins filed a written waiver of his right to a jury trial, which stated: "Comes now Defendant with counsel & waives jury trial. Defendant requests a trial by judge (bench trial)." Both Collins and his counsel signed the waiver, along with the trial court. Before accepting the waiver, the trial court questioned Collins on the record:

THE COURT: And, Mr. Collins, is this your signature on the memorandum waiving your right to a jury trial?

[COLLINS]: Yes, ma'am.

THE COURT: Okay. And have you had enough time to talk to your attorney before waiving this right?

[COLLINS]: Well, just as long as he'll do what I tell him to do.

THE COURT: Okay. So this was your decision?

[COLLINS]: That's true.

Collins' trial began on November 11, 2012. Prior to opening statements, the trial court again asked Collins' counsel about the waiver of jury trial, and counsel confirmed that both he and Collins had signed the waiver. Collins' counsel also assured the trial court that he believed Collins "fully understood what it was he was signing at that time[.]" Collins' coun-

1. The version of the statutes in effect on the date of Collins' April 30, 2011 DWI offense, are the versions that apply in this case. *State v. Coomer,* 888 S.W.2d 356, 358–60 (Mo.App. S.D.1994). In this case, Collins was arrested on April 30, 2011. Therefore, all references to sections 577.010 and 577.023 are to RSMo Cum.Supp. (2010), and all references to section 302.321 are to RSMo Cum.Supp. (2005). The State cites RSMo Cum.Supp. (2010) as to section 302.321. All other references to statutes are to RSMo 2000, unless otherwise indicated.

2. The charge was later amended charging Collins as a prior and persistent felony offender; however, this charge was struck from the "Second Amended Information" on the day of trial.

sel confirmed that Collins was "still persisting in his request for a bench trial." The trial court then inquired of Collins, and Collins confirmed that his counsel's statements were correct, and that he was satisfied with counsel's services. Collins did not object to proceeding with a bench trial. Trial commenced.

At trial, the State introduced into evidence, without objection, certified copies of records concerning Collins' prior convictions for DWR (two convictions) and DWI (three convictions). The trial court found "that the State has proven the—the priors that would enhance the—the [DWR] to a class D felony and the [DWI] to a class C felony." [3]

Officer Torey Thompson ("Officer Thompson"), with the Howell County Sheriff's Department, testified that on April 30, 2011, at about 1:39 a.m. on U.S. Highway 160, he observed Collins driving a vehicle that had a non-functioning headlight. Officer Thompson initiated a traffic stop, and Collins pulled over onto a county road.

When Officer Thompson approached the vehicle, he saw Collins in the driver's seat and Monty Reynolds ("Reynolds") in the passenger seat. He could also smell the odor of intoxicants coming from the vehicle as he approached, and observed alcohol inside the vehicle. Officer Thompson learned the vehicle belonged to Reynolds, who appeared to Officer Thompson to be "very, very intoxicated."

Officer Thompson asked Collins for his driver's license, and Collins provided a non-driver identification card. Collins had "quite difficulty" retrieving his identification card, and it took him "well over a minute to hand" it to Officer Thompson.

Officer Thompson asked Collins to come to his patrol vehicle so that Officer Thompson could conduct a check of his driver's license. Officer Thompson also wanted to determine whether the odor of intoxicants was coming from Collins or Reynolds.

Collins did not want to exit the vehicle and he kept saying that "he was good, that he was just going a little ways down the road." Officer Thompson asked Collins a second time, and he kept saying the same thing. Collins eventually complied and as he got out of his vehicle, "he kind of lost his balance, staggered just a little bit, and then proceeded to walk to" the patrol vehicle.

Collins told Officer Thompson that he was "coming from The Spot," a bar located on Highway 160. Officer Thompson conducted a check of Collins' driver's license, and the dispatcher advised Officer Thompson that Collins' driver's license was revoked and had been "for quite some time."

Officer Thompson questioned Collins, and Collins said that he had drunk three beers. Officer Thompson conducted the horizontal gaze nystagmus test, a field sobriety test. Based on his observations during the test—Collins showed five out of six indicators or "clues"—Officer Thompson believed that Collins was intoxicated. Officer Thompson asked Collins to participate in some other field sobriety tests, but Collins refused and "started to become belligerent and argumentative[.]"

Collins said that "even the highway patrol couldn't do anything with him[,]" and Collins showed Officer Thompson "an appellate court summary opinion having to do with a previous DWI" that Collins had with him. Collins said that he believed his

---

**3.** Collins' counsel stated he had "no objection as to the priors used to enhance to the D felony of driving while invoked [sic] and the priors used to enhance the C felony of driving while intoxicated."

license was valid and he referred to the opinion.

Officer Thompson arrested Collins for DWI and DWR. As Officer Thompson transported Collins to the Howell County sheriff's office, Collins was belligerent and said that he was "going to sue" Officer Thompson. At the sheriff's office, Collins "gave [Officer Thompson] his middle finger." At the traffic stop, Officer Thompson read the *Miranda*[4] warnings and the implied consent law to Collins, and advised Collins that refusing to take a breath test would result in his driver's license being revoked for one year and that evidence of his refusal could be used against him in court. Collins refused the breath test.

During his encounter with Collins, Officer Thompson made observations about Collins. These observations included: smelled "a strong odor of intoxicants about his person or breath[;]" eyes were bloodshot, glassy, staring and watery in appearance; he had been "off balance and staggered" when he exited his vehicle; and his speech was "slurred and hard to understand at times."

At the conclusion of trial, the trial court found Collins guilty of the class D felony of DWR and the class C felony of DWI.

On January 15, 2013, the trial court sentenced Collins to two years in the Missouri Department of Corrections for DWR and five years for DWI, with the sentences to run concurrently. This appeal followed.

Collins contends the trial court erred in proceeding to trial without a jury because "the record did not demonstrate with unmistakable clarity that [Collins] knowingly, intelligently, and voluntarily waived his right to trial by jury[.]" Collins further contends the trial court erred in finding Collins guilty of DWR under section

302.321 because the State failed to prove Collins "knew" his driving privilege had been revoked or that he acted with criminal negligence with respect to knowing his driving privilege had been revoked. The State contends the trial court did not err in accepting Collins' waiver or his right to a jury trial and the evidence was sufficient to support Collins' DWR conviction.

The issues presented for our determination are:

1. Whether the trial court proceeding to trial without a jury, in light of Collins' jury trial waiver, was plain error that resulted in manifest injustice or a miscarriage of justice.

2. Whether there was sufficient evidence to prove beyond a reasonable doubt that Collins was driving a motor vehicle knowing or with criminal negligence with respect to the knowledge that his driving privilege had been revoked.

### *Point I*

■ Collins' first point alleges the trial court erred in proceeding to trial without a jury because "the record did not demonstrate with unmistakable clarity that [Collins] knowingly, intelligently and voluntarily waived his right to a trial by jury[.]" Collins concedes this issue was not raised at the trial level, and as a result, requests plain error review. "Plain error review is governed by Rule 30.20,[5] which authorizes us to review, in our discretion, 'plain errors affecting substantial rights when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.'" *State v. Bode*, 125 S.W.3d 924, 927 (Mo.App. W.D.2004) (quoting Rule 30.20).

---

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. All rule references are to Missouri Court Rules (2013).

## Standard of Review

Plain error review is discretionary and involves a two-step analysis. *State v. Jennings,* 322 S.W.3d 598, 601 (Mo.App. S.D.2010). First, this Court considers the facts and circumstances to facially determine if there was plain error—meaning "evident, obvious and clear" error. *Id.* "In the absence of 'plain error,' we lack discretion to review claimed error under Rule 30.20." *Bode,* 125 S.W.3d at 927. Only after identifying plain error, do we proceed to the second step of determining whether manifest injustice, or a miscarriage of justice resulted. *Id.* Collins has the burden to establish the trial court committed plain error, and that there has been a manifest injustice or miscarriage of justice. *State v. Robinson,* 392 S.W.3d 545, 554 (Mo.App. S.D.2013).

## Analysis

From the face of the record, we do not find plain error. A criminal defendant in Missouri has a right to have a jury decide his guilt or innocence. *State v. Mitchell,* 145 S.W.3d 21, 23 (Mo.App. S.D. 2004). " 'However, it is well-established law that a criminal defendant has a right to waive his constitutional right to a jury trial provided such waiver is voluntarily, knowingly and intelligently made.' " *Id.* (quoting *State v. Sharp,* 533 S.W.2d 601, 605 (Mo. banc 1976)). A defendant's waiver "must appear from the record with unmistakable clarity." *State v. Bibb,* 702 S.W.2d 462, 466 (Mo. banc 1985).

Rule 27.01(b) governs waiver of a jury trial and provides that a defendant may, with the assent of the court, "waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury." Rule 27.01(b) further requires that in felony cases, "such waiver by the defendant shall be made in open court and entered of record." Rule 27.01(b). This rule requires only that the waiver be made in "open court"; it does not contain language requiring the trial court to personally examine the defendant on the record about whether the defendant understands the right. *State v. Beam,* 334 S.W.3d 699, 704 (Mo.App. E.D.2011). "There is no reason to require that the judge question the defendant on the record, if the record shows that the waiver was knowing, intelligent, and voluntary." *State v. Baxter,* 204 S.W.3d 650, 654 (Mo. banc 2006) (finding that although the "constitution requires that a waiver be knowing, intelligent, and voluntary[,] ... the constitution does not mandate how this is to be achieved.").

Here, the record demonstrates that Collins' jury trial waiver was knowing, voluntary, and intelligent. At the pre-trial conference three months prior to trial, Collins and his attorney filed a written waiver of his right to a jury trial in open court. Collins was present when the waiver was made in open court on two different occasions. Both Collins and his counsel signed the waiver, along with the trial court. Before accepting the waiver, the trial court questioned Collins on the record, as follows:

THE COURT: And, Mr. Collins, is this your signature on the memorandum waiving your right to a jury trial?

[COLLINS]: Yes, ma'am.

THE COURT: Okay. And have you had enough time to talk to your attorney before waiving this right?

[COLLINS]: Well, just as long as he'll do what I tell him to do.

THE COURT: Okay. So this was your decision?

[COLLINS]: That's true.

The trial court again asked Collins' counsel about the waiver on the morning of

trial, and counsel confirmed that both he and Collins had signed the waiver. Collins' counsel again assured the trial court that he believed Collins "fully understood what it was he was signing at that time[.]" Collins was present when the waiver was again confirmed, and he did not object. The trial court then inquired of Collins and his counsel as follows:

THE COURT: And [do you believe] that he is still persisting in his request for a bench trial?

[COLLINS' COUNSEL]: Yes, Your Honor.

THE COURT: Okay. And is that correct, Mr.—Mr. Collins?

[COLLINS]: Yes. Yes.

THE COURT: And are you satisfied with the services of your attorney?

[COLLINS]: Yes, sir—ma'am.

In *Bode*, 125 S.W.3d at 924, the Western District considered, under plain error review, whether a written waiver signed by both defendant and counsel, combined with mentioning the waiver in open court at the start of trial, satisfied the requirements of Rule 27.01. The Western District found the procedure was sufficient to demonstrate the waiver was made with "unmistakable clarity" and declined the request for relief under plain error review.

On the day of trial, [Bode's counsel] filed a waiver signed by him and Bode. A written jury waiver, signed by client and lawyer, filed with the court, is an effective waiver of a jury trial and complies with Rule 27.01(b). *State v. Butler*, 415 S.W.2d 784, 785 (Mo.1967); *State v.*

*Turnbough*, 604 S.W.2d 742, 746 (Mo. App.1980). The circuit court acknowledged that the written waiver was in the court's file and tersely assented to it.

From the face of the record, Bode expressed his waiver in a written pleading that he and his lawyer signed, and [Bode's counsel] expressed the waiver in open court with the judge's assent. Bode's waiver and the judge's assent appear on the record with unmistakable clarity. Bode was present during the proceedings and raised no objections. *See State v. Hatton*, 918 S.W.2d 790, 795 (Mo. banc 1996). We, therefore, decline review of Bode's claim under Rule 30.20.

*Id.* at 928.[6]

Like *Bode*, Collins expressed his waiver of jury trial by filing *in open court*, a written waiver that he and his lawyer both signed. A written jury trial waiver, signed by the client and lawyer, filed with the court complies with Rule 27.01 and, in fact, is the preferred method. *State v. Britt*, 286 S.W.3d 859, 860 (Mo.App. S.D.2009) (noting the waiver is not required to be in writing, but "that is the preferred method."). The trial court acknowledged Collins' written waiver on the record, and also questioned Collins *and* his counsel on the record about the waiver on two different occasions: at the pre-trial conference and the morning of trial. Here, the trial court went beyond what is required by Rule 27.01 (and the questioning found in *Bode* ) as the only requirement is that a waiver be made in open court, along with assent of

---

**6.** Similarly, in *State v. Ramirez*, 143 S.W.3d 671 (Mo.App. W.D.2004), the court rejected defendant's claim that the trial court failed to ascertain with "unmistakable clarity" that defendant's waiver of right to jury trial was voluntary, knowing and intelligent. The defendant stated in court that he wished to waive the right to jury trial and defense coun-

sel stated that he had discussed the waiver of jury trial with the defendant. *Id.* at 675. The court found no plain error because the waiver was made in open court and entered in the record and because defendant never complained prior to appeal about the lack of jury trial. *Id.* at 675–77.

the court.[7] During both times, Collins and his attorney both expressed approval of the waiver of jury trial. We find Collins' waiver, his attorney's waiver, and the trial court's assent appear on the record with unmistakable clarity.

Moreover, the record also demonstrates that neither Collins nor his counsel ever objected or complained about proceeding without a jury at any time before or during trial. *See State v. Ramirez*, 143 S.W.3d 671, 675 (Mo.App. W.D.2004). Collins was present during the waiver at the pre-trial conference, on the morning of trial, and throughout the trial proceedings, and raised no objections. Collins stated to the trial court that it was his signature on the written waiver and it was his decision. The issue was brought up again the morning of trial, and Collins did not object at any time, rather confirmed he was "still persisting in his request for a bench trial." *See State v. Hatton*, 918 S.W.2d 790, 795 (Mo. banc 1996).

This was not Collins' first criminal trial, nor was this his first criminal trial during which he waived his right to trial by jury. Collins was on trial in September 2008, discussed in Point II below, following a charge of DWI and DWR in Douglas County. A certified copy of records concerning his ultimate conviction following a bench trial in Douglas County was admitted in this matter as Exhibit 4. Just like this case, the docket entries in the Douglas County case show Collins waived his right to a jury trial on two occasions: prior to trial and again on the morning of trial.

Because Collins' waiver, his attorney's waiver, and the trial court's assent appear on the record with unmistakable clarity, Collins fails to meet his burden to prove plain error.

"[T]his Court may decline, within its discretion, claims of plain error that do not facially establish substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Rhodes*, 988 S.W.2d 521, 526 (Mo. banc 1999). In this case, Collins' unpreserved claim of error does not facially establish grounds for finding plain error occurred. We, therefore, decline to review Collins' claim under Rule 30.20 plain error. Collins' Point I is therefore denied.

### Point II

Collins also contends the evidence was insufficient to convict him for DWR. In his second point, he claims the trial court erred in finding him guilty of DWR, in violation of section 302.321, "in that the evidence failed to prove beyond a reasonable doubt that when [Collins] was driving a motor vehicle, he was doing so knowingly or 'with criminal negligence with respect to knowledge of the fact that his driving privilege ha[d] been … revoked.'" We disagree.

### Standard of Review

"Weighing the evidence to determine whether a defendant is guilty beyond a reasonable doubt is the jury's responsibility and not the function of the appellate court." *State v. Johnson*, 948 S.W.2d 161, 166 (Mo.App. E.D.1997). This Court's review is to determine whether "substantial evidence was adduced to support the trial court's finding." *State v. Pike*, 162 S.W.3d 464, 469 n. 4 (Mo. banc 2005) (internal quotation and citation omitted). "In determining whether there is sufficient evidence to support the conviction, this [C]ourt accepts as true all evidence tending to prove

---

7. While it may be "best practice" to question a defendant personally, the failure to do so does not mean plain error occurred. *See*

*Baxter*, 204 S.W.3d at 655; *Bode*, 125 S.W.3d at 927; *State v. Hannah*, 337 S.W.3d 114, 117–18 (Mo.App. W.D.2011).

guilt together with all reasonable inferences that support the finding. All contrary evidence and inferences are ignored." *State v. McKinney*, 253 S.W.3d 110, 113 (Mo.App. W.D.2008) (internal citations omitted).

## Analysis

Under section 302.321.1 in effect on the date of Collins' arrest, a person commits the crime of DWR

> if such person operates a motor vehicle on a highway when such person's license or driving privilege has been cancelled, suspended, or revoked under the laws of this state ... and acts with criminal negligence with respect to knowledge of the fact that such person's driving privilege has been cancelled, suspended, or revoked.

Section 562.016.5 provides a person "acts with criminal negligence" or is criminally negligent when "he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

"The fact-finder 'is permitted to draw such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, part, or none of the testimony of any witness.'" *McKinney*, 253 S.W.3d at 114 (quoting *Johnson*, 948 S.W.2d at 166). "'The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct.'" *Id.*

In this case, the proof that Collins acted with criminal negligence with respect to knowledge that his driver's license had been revoked was made by State's Exhibit 1, a certified copy of Collins' Missouri driving record. *See State v. Hurd*, 877 S.W.2d 644, 645 (Mo.App. W.D.1994) (finding proof of requisite mental state was made by certified copy of defendant's driving record); *State v. Brown*, 804 S.W.2d 396, 398 (Mo.App. W.D.1991) (holding the introduction of appellant's prior convictions and driving record were "pertinent on the issue of knowledge."). Collins' driving record showed that his "Non-commercial Class F" license expired on September 20, 1986. His driving record also showed Collins' license had been revoked 30 times from 1985 to 2009.[8] Of the 30 revocations, 12

---

8. October 30, 1985—chemical refusal revocation (eligible for reinstatement on October 30, 1986);

January 3, 1986—point revocation (eligible for reinstatement on January 3, 1987);
September 2, 1986—point revocation (eligible for reinstatement September 2, 1987);
June 11, 1987—chemical refusal revocation (eligible for reinstatement on June 11, 1988);
June 15, 1987—point revocation (eligible for reinstatement on June 15, 1988);
December 22, 1988—point revocation (eligible for reinstatement on December 22, 1989);
May 18, 1989—point revocation (eligible for reinstatement on May 18, 1990);

September 25, 1989—administrative alcohol revocation (eligible for reinstatement on September 24, 1990);
April 26, 1991—point revocation (eligible for reinstatement on April 26, 1992);
July 22, 1991—chemical refusal revocation (eligible for reinstatement on July 22, 1992);
July 23, 1991—administrative alcohol revocation (eligible for reinstatement on July 22, 1992);
December 17, 1991—point revocation (eligible for reinstatement on July 22, 1992);
April 11, 1992—administrative alcohol revocation (eligible for reinstatement on April 11, 1993)
October 6, 1992—point revocation (eligible for reinstatement on October 7, 1992);

involved either "a chemical refusal revocation" or "administrative alcohol revocation." [9] Collins' driving record indicates the revocations to his license were continuous, and does not indicate his license was ever reinstated. *See Brown*, 804 S.W.2d at 398 (finding twenty entries in the driver record over twenty-five years established "the requisite mental state" on appellant's knowledge).

Further evidence of Collins' criminal negligence is the "10 Year Minimum Denial" revocation. According to this entry on Collins' driving record, at the time of his arrest, Collins was not eligible for reinstatement of his license until December 2, 2018, another 7 ½ years. This revocation is relevant as to whether Collins knew or whether his alleged failure to know was a gross deviation from the care a reasonable person would exercise in his situation. *See State v. Huff*, 879 S.W.2d 696, 699 (Mo.

App. E.D.1994) (finding previous revocation relevant to the issue of defendant's knowledge).

Collins argues he was "adamant that his 'license status' was valid[,]" as he had "an appellate court opinion summary having to do with a previous DWI [Collins] had received and appealed." We assume Collins is referring to *State v. Collins*, 328 S.W.3d 705 (Mo. banc 2011).[10] However, the Supreme Court of Missouri's January 11, 2011 opinion did *not* indicate in any way that Collins' license status was returned to valid upon remand. Instead, the supreme court ordered the case remanded for Collins to be "re-sentenced for the class B misdemeanor offense of DWI" rather than the class B felony of DWI because the "state failed to adduce, prior to sentencing, the necessary evidence to prove that [Collins] is a chronic DWI offender." *Collins*,

September 6, 1994—administrative alcohol revocation (eligible for reinstatement September 6, 1995);
November 7, 1994—chemical refusal revocation (eligible for reinstatement on November 7, 1995);
March 3, 1995—point revocation (eligible for reinstatement on March 3, 1996);
June 9, 1996—chemical refusal revocation (eligible for reinstatement on June 9, 1997);
February 5, 1997—"10 Year Minimum Denial" (eligible for reinstatement on September 10, 2002);2
February 5, 1997—point revocation (eligible for reinstatement on February 5, 1998);
August 19, 1997—chemical refusal revocation (eligible for reinstatement on August 19, 1998);
April 29, 1998—point revocation (eligible for reinstatement on April 29, 1999);
April 13, 1999—point revocation (eligible for reinstatement on April 13, 2000);
June 19, 2001—administrative alcohol revocation (eligible for reinstatement on June 19, 2002);
September 18, 2002—point revocation (eligible for reinstatement on September 18, 2003);
April 16, 2003—point revocation (eligible for reinstatement on April 16, 2004);

May 31, 2003—point revocation (eligible for reinstatement on May 31, 2005);
February 29, 2004—chemical refusal revocation (eligible for reinstatement February 28, 2005);
January 7, 2009—"10 Year Minimum Denial" (eligible for reinstatement December 2, 2018); and
January 7, 2009—point revocation (eligible for reinstatement January 7, 2010).

9. The State also introduced into evidence, without objection, certified copies of records concerning Collins' prior convictions for DWR (two convictions) and DWI (three convictions). These convictions are also relevant to Collins' knowledge.

10. We "assume" because Collins incorrectly cited this case as *"State v. Collins*, 328 S.W.3d 705 (Mo. banc 2011)." However, this opinion is also referenced in Exhibit 4, a letter dated February 23, 2011, from the Douglas County trial court noting the "Supreme Court of Missouri has recently released an opinion, reversing the judgment finding [Collins] guilty of a Class C Felony–DWI, and instead finding him guilty of Class B Misdemeanor–DWI."

328 S.W.3d at 710 (finding because there was no evidence at trial that Collins was represented by or waived the right to an attorney for his prior intoxication-related traffic offenses, the State failed to prove Collins was a chronic offender).[11] Section 302.321.1(9), RSMo. Cum.Supp. (2009), provides a license shall not be issued "[t]o any person who has been convicted more than twice of violating state law ... relating to driving while intoxicated." The supreme court's remand of Collins' other case, therefore, had no bearing on the status of Collins' license as he was still convicted of an offense relating to DWI.

Furthermore, two months after the supreme court's opinion, Collins was issued a "Non-driver class" identification card. Exhibit 1 showed this identification card was issued to Collins on March 8, 2011, *almost two months after the supreme court's opinion and two months before the incident in this case.* This corroborates Officer Thompson's testimony that Collins provided him a non-driver identification card. In reviewing the sufficiency of the evidence, we consider all reasonable inferences favorable to the verdict and disregard any evidence or inferences to the contrary. *Huff,* 879 S.W.2d at 698. A reasonable fact finder could have readily inferred Collins was aware his driver's license was revoked two months before this

incident when he was issued an identification card.[12]

Collins argues his Missouri driving record, Exhibit 1, did not show he was "ever notified of his revocation, and thus did not establish his mental state." In support, Collins relies on *State v. Tippett,* 716 S.W.2d 909 (Mo.App. E.D.1986). His reliance is misplaced for several reasons. First, section 302.321—applicable to Collins' case—expressly includes the culpable mental state of "criminal negligence," while in *Tippett,* the applicable section 302.321, RSMo Cum.Supp.1984, did not include a culpable mental state. *Id.* at 910. Second, in *Tippett,* the defendant's revocation became effective *the same day as* his arrest, and defendant claimed he did not receive notice of revocation of his driving privilege until 10 days after his arrest. *Id.* Unlike *Tippett,* Collins' first revocation took place in 1985, more than 25 years prior to his arrest in this case. Over the course of 25 years, Collins' license was revoked approximately 30 more times.[13] Collins' extensive history of revocations is sufficient evidence for a reasonable person to conclude Collins had the requisite mental state.

Finally, Collins' driving record further established the requisite mental state because it showed his license cannot be reinstated, *by law,* until December 2, 2018,

11. Unlike that case, in this case, the State offered into evidence certified copies of Collins' prior convictions for DWI.

12. A reasonable fact finder could have also found, based on his driving record, that Collins' claims that his "license status" was valid were not credible. Collins has not been issued a valid driver's license since 1986, a fact he was clearly aware of two months before this incident when he was issued an identification card. Furthermore, as of January 2009, he was not eligible for reinstatement of his license until 2018.

13. Collins also cites *State v. Walker,* 832 S.W.2d 953 (Mo.App. S.D.1992), which is distinguishable from this case as well. The statute in *Walker,* section 302.321, RSMo Cum. Supp. (1990), did not include a culpable mental state. In addition, the court noted the defendant's license "was revoked following a series of offenses, no [sic] one of which would require the revocation. He would not necessarily know when or if his license was revoked" as in the case where an offense gave 12 points on a license requiring revocation. *Id.* at 954 (citing *Johnson,* 687 S.W.2d at 710).

following his December 2008 conviction. *See* section 302.060.1(9), RSMo Cum.Supp. (2012). "Regardless of [Collins'] claims that he was not notified of the . . . revocation, all persons are presumed to know the law." *State v. Johnson,* 687 S.W.2d 706, 710 (Mo.App. W.D.1985).

Collins further argues the State had to prove Collins "knew" his license was revoked because the State alleged in the Information that Collins "knew" his operator's license was revoked. We disagree. The Information charged that Collins violated section 302.321. The clear and unambiguous language of section 302.321 sets forth the required culpable mental state of "criminal negligence" for committing the crime of DWR. In addition, "criminal negligence" is clearly and unambiguously defined in section 562.016.5. Therefore, there is no room for construction of the required culpable mental state in section 302.321. *See Hyde Park Housing Partnership v. Director of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993).

Contrary to Collins' claim that the State assumed a "higher burden," it was the State's burden to prove the requisite mental state of criminal negligence. This required the State to prove Collins drove his car while either knowing *or* failing to be aware that his driving privilege was revoked and such failure to be aware constituted a gross deviation from the standard of care a reasonable person would exercise in the situation. § 562.016.5; *see also Huff,* 879 S.W.2d at 698.

In light of Collins' expired license since 1986 with no renewal, 30 license revocations, continuous revocations, "10 Year Minimum Denial" revocation effective January 2009, and issuance of an identification card two months prior to the subject incident, we find sufficient evidence exists to show Collins drove the vehicle while knowing or with criminal negligence with respect to knowledge of the fact that his driving privilege had been revoked. His driving record alone is substantial evidence to support the trial court's finding. The record provides more than sufficient evidence upon which a trier of fact could find beyond a reasonable doubt that Collins violated section 302.321 and was criminally negligent for driving while his license was revoked.

### Conclusion

We have carefully considered Collins' plain error claim in Point I, but find it without merit. In addition, the evidence regarding DWR, viewed favorably to the result, supports Collins' conviction. Therefore, Collins' points are both denied. The trial court's judgment is affirmed.

NANCY STEFFEN RAHMEYER, P.J. and DANIEL E. SCOTT, J., concur.