

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | **WD86487** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **November 12, 2024** |
| SULIANG BU, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Joshua C. Devine, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge
Thomas N. Chapman and Janet Sutton, Judges

Mr. Suliang Bu ("Bu") appeals from the judgment of criminal convictions entered by the Circuit Court of Boone County, Missouri ("trial court"), following a bench trial. Bu's single point on appeal contends that the trial court plainly erred by accepting his waiver of a jury trial because the waiver was not knowingly, voluntarily, and intelligently given. Finding no error, plain or otherwise, we affirm the trial court's judgment.

**Factual and Procedural Background**[1]

Bu is a Chinese national who came to the University of Missouri to obtain a Ph.D. in computer science. He started working in a lab on campus in the fall of 2014. In October 2019, he began performing non-consensual sex acts on a female Chinese national who was also enrolled at the university. He was charged in the trial court with felony attempted rape in the first degree, felony rape in the first degree, and misdemeanor sexual abuse in the second degree.

Prior to trial, Bu's defense counsel filed a written jury trial waiver, which was signed by both Bu and his defense counsel. Before questioning Bu about his understanding of the waiver, the trial court inquired about his English language proficiency:

> **[TRIAL COURT]**: [Y]ou do speak English fairly well; is that right?
>
> **[BU]** (in English): How do I put this? I think I can understand some of English, but if you speak very fast, there are many English idioms are lost. I will not understand what you mean.
>
> **[TRIAL COURT]**: I understand what you're telling me. And so that's why we're providing a Chinese language interpreter for you, Mr. Bu.

Bu was provided with a headset so that he could listen to the two interpreters that were present. The "active interpreter" was responsible for interpreting simultaneously, while the "passive interpreter" was available to assist Bu in speaking with defense

---

[1] "In reviewing a bench-tried case, the appellate court views the facts in the light most favorable to the judgment." *Price v. Thompson*, 616 S.W.3d 301, 305 n.2 (Mo. App. W.D. 2020) (citing *Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 299 n.2 (Mo. App. W.D. 2014)).

counsel.  The trial court then entered into a lengthy colloquy with Bu, confirming he

understood the implications of giving up his right to have a jury determine his guilt and

sentencing:

> **[TRIAL COURT]**: [A]nybody that needs a headset now currently has a headset for interpretation purposes in the courtroom.  And there were a couple of additional matters that need to be taken up procedurally before we get to evidence.  The first one is what [defense counsel] just brought up, and that is the waiver of jury trial that was filed by the defendant on April 3rd of 2023.  That waiver of jury trial recites, quote, [c]omes now Defendant in person and by and through counsel and with full understanding of his right to a jury trial, including but not limited to requiring a unanimous verdict to convict, hereby waives his right to a jury trial and requests that the Court decide the issues of fact, closed quote.
>
> . . . .
>
> **[TRIAL COURT]**: Mr. Bu, did you, in fact sign that waiver of jury trial form that I just read into the record?  (The defendant responded in English as follows:)
>
> **[BU]**: Yes, Your Honor.
>
> **[TRIAL COURT]**: All right.  And I don't want to talk to you about any private conversations you've had with [defense counsel] because your conversations with him are, in fact, private.  So don't tell me anything about what was said.  But I do need to make sure that I understand that you understand your rights.  And have you had an opportunity to speak with [defense counsel] regarding your right to trial by jury in this case?
>
> **[BU]**: Yes.  Do I need to stand up?
>
> **[TRIAL COURT]**: You're fine sitting right there.  I appreciate you asking, though.  And do you understand, sir, that as part of this case, you do have the absolute right to have a jury of your peers, it would be 12 people from this community, decide the issues of fact in this case?
>
> **[BU]**: Yes, Your Honor.
>
> **[TRIAL COURT]**: And they would also decide, if you wanted a trial by jury that is, those 12 people would be called upon to decide whether you were guilty or not guilty after hearing all of the evidence and having

3

received the instructions from the Court regarding the matters of law. Do you understand that?

**[BU]**: Yes, Your Honor.

**[TRIAL COURT]**: All right. And [defense counsel], am I correct that this defendant has no prior convictions of any sort?

**[DEFENSE COUNSEL]:** As far as I know, Judge, no, he has no convictions.

**[TRIAL COURT]**: And what I'm getting at is Defendant would have the right to jury sentencing as well if he was convicted and wanted to proceed that way?

**[DEFENSE COUNSEL]**: Yes, he would, but I'd also waive that as well.

**[TRIAL COURT]**: Understood. So one of the things that you would be entitled to, Mr. Bu, is with respect to a trial by jury is if you were found guilty by that jury, because you have no prior convictions of any sort, you would have the absolute right to have the jury decide what punishment to impose upon you. And of course, that's if you were found guilty by the jury. If you're found not guilty, we don't make it to that step. But do you understand that right?

**[BU]**: Yes, Your Honor.

**[TRIAL COURT]**: All right. And do you understand that by waiving your right to trial by jury, there will not be 12 people sitting to decide your guilt—whether you're guilty or not guilty? All of the issues of fact will be turned over to me, the judge, to decide factually what occurred in this case.

**[BU]**: Yes, Your Honor.

**[TRIAL COURT]**: In other words, instead of having 12 people from our community decide the issue, by waiving your right to trial by jury, you're leaving it up to me, the judge, to make that determination as to whether you're guilty or not guilty. Do you understand that?

**[BU]**: Yes, Your Honor.

**[TRIAL COURT]**: You are also leaving it up to me, the judge, to make a determination as to what punishment to impose if I were to find you guilty. Do you understand that?

**[BU]**: Yes, Your Honor.

. . . .

**[TRIAL COURT]**: And in terms of how this trial will proceed, if you want to waive your right to trial by jury—and I know you've already filed the form, but I'm going to ask you about that momentarily. Everything else will proceed as if a jury were here, except I will be sitting as the finder of fact, and there won't be a jury in the courtroom. But there will be a presentation of evidence by the State. Your attorney will have the opportunity to cross-examine, that is ask questions of any witnesses offered by the State. Your attorney will also have the opportunity to put on any evidence he may wish to put on, including—and we'll talk about this at the appropriate time—you may wish to testify in this case, or you may not wish to testify in this case. And that's your right to make that decision as to what you do. And when we get to that point, I will ask you some questions about that. But do you understand the process of what will occur here today and over the course of the next couple of days that we are scheduled to be together for this bench trial?

**[BU]**: (No response.)

**[TRIAL COURT]**: Do you understand the process?

**[BU]**: I just know I need to appear in court and when someone asks me questions, I need to give them a answer.

**[TRIAL COURT]**: All right. And you understand that you have the right not to testify should you so choose?

**[BU]**: Yes, Your Honor.

**[TRIAL COURT]**: And you understand the Court is not going to hold it against you that you did not testify if that's a decision that you make?

**[BU]**: Yes, Your Honor.

. . . .

**[TRIAL COURT]**: All right. Mr. Bu, I have inquired of you regarding your decision to waive trial by jury. I have the form in front of me, and it is signed by you waiving trial by jury. Is that your decision? Do you wish to waive trial by jury and proceed with a bench trial today?

**[BU]**: Yes, Your Honor.

**[TRIAL COURT]**: All right. And the Court will find that Defendant has made a knowing, voluntary, and intelligent waiver of his right to trial by jury. We will proceed with the bench trial.

During the three-day bench trial, which commenced on June 21, 2023, Bu demonstrated he could understand much of what was being said without the benefit of interpretation, opting at times to take off his headset to listen to the proceedings. The trial court took notice and issued the following remarks at two separate points during the trial:

> **[TRIAL COURT]**: Mr. Bu, I have noticed that you've had the headphones for interpretation around your neck throughout the prior witness. You can use those as you see fit. You don't have to wear them if you don't want. I know you understand English fairly well, so it's just up to you. We're going to continue to provide the interpretation because we do have the alleged victim that is sitting in the back room there. And also, we've called the interpreters in to do all of that. But you just use the interpretation as you need it, sir. Okay?
>
> . . . .
>
> Mr. Bu, I know that you have been sometimes using headphones, sometimes not. We have the interpreters available to you. If you need them at any point -- I see your headphones are not on -- you could put them on and interpretation will be provided. It's up to you as to what you want to do. I see that you've got them around your neck right now. But if you want to put your headphones on, we'll have interpretation provided for you. Okay?

At the close of evidence, the trial court found Bu guilty of all charged offenses. Bu filed a Motion for New Trial or Judgement of Acquittal with the assistance of his defense counsel. Neither filing included a claim of error related to his jury trial waiver. A sentencing hearing took place on August 8, 2023, during which the trial court denied

6

the Motion for New Trial and permitted Bu to make a statement. Bu pleaded for leniency and expressed through the interpreter that he "studied really hard for seven years to receive [his] doctorate" and that he wanted to use his knowledge "to benefit the entire humanity." Bu elaborated that, while he was awaiting trial, he published "one high-quality journal paper and three conference papers" related to helping people with hearing damage. He stated that he was researching an algorithm that, if proved, would possibly be the biggest breakthrough in the last thirty years of the field.

The trial court issued a judgment sentencing Bu to a total of ten years' imprisonment. Bu now appeals, asserting that the trial court plainly erred by accepting his waiver because it was not knowingly, voluntarily, and intelligently given.

### Standard of Review

Bu acknowledges that his claim is not preserved and requests plain error review under Rule 30.20.[2] Rule 30.20 provides, in pertinent part, "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Under plain error review, we must determine whether the alleged error is 'evident, obvious, and clear error' [and] 'facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice' has occurred." *State v. Ratliff*, 622 S.W.3d 736, 745-46 (Mo. App. W.D. 2021) (quoting *State v. Campbell*, 600 S.W.3d 780, 788-89 (Mo. App. W.D. 2020)). "[T]he defendant bears the burden of demonstrating manifest

---

[2] All rule references are to MISSOURI COURT RULES - STATE 2023.

7

injustice." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018)).

## Analysis

In his sole point on appeal, Bu argues his waiver of the right to jury trial was not voluntarily, knowingly, and intelligently given because the trial court did not instruct him on certain aspects of the right, to wit:

> [T]hat potential jurors for his case would be chosen from a fair cross-section of Boone County, that he would have a right to participate in the selection of the jury, that the trial court would instruct the jury to presume him innocent and convict only if it concluded on the State's burden beyond a reasonable doubt that he was guilty, or that the jury would have to make a unanimous decision in order to convict him.

"The constitutions of the United States and Missouri both guarantee a defendant in a criminal case the right to a jury trial." *State v. Hilbert*, 663 S.W.3d 462, 466 (Mo. banc 2023) (citing U.S. CONST. amends. VI, XIV; MO. CONST. art. I, §§ 18(a), 22(a)). Pursuant to Rule 27.01, a criminal defendant "may, with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court." The waiver must be "voluntarily, knowingly and intelligently made." *State v. Sharp,* 533 S.W.2d 601, 605 (Mo. banc 1976).

The waiver of a trial by jury is considered knowing, voluntary, and intelligent if a defendant "fully understands the nature of the right and how it would likely apply *in general* in the circumstances." *State v. Emmanuel*, 667 S.W.3d 664, 669 (Mo. App. W.D. 2023) (emphasis added) (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002)). "The best practice for a trial court is to question the defendant personally, on the record, to

8

ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right." *Hilbert*, 663 S.W.3d at 466 (quoting *Baxter*, 204 S.W.3d 650, 655 (Mo. banc 2006)).

Notably, neither Missouri nor federal law require that a defendant be informed of the "*specific detailed* consequences" of invoking the waiver. *Emmanuel*, 667 S.W.3d at 670 (internal quotation marks omitted) (quoting *Ruiz*, 536 U.S. at 629). "A defendant, for example, may waive . . . his right to a jury trial . . . even if the defendant does not know . . . who will likely serve on the jury." *Id.* (alteration in original) (quoting *Ruiz,* 536 U.S. at 629-30).

In *State v. Emmanuel*, we applied these principles to reject a claim that a defendant's ("Emmanuel") waiver was not knowing or voluntary because the trial court did not explain the specific consequence that the jury would have to reach a unanimous verdict. *See generally id.* In making this determination, we emphasized that Emmanuel fully understood the nature of the right to trial by jury and how it would *generally* apply to his circumstances, as evidenced by a series of confirmations by Emmanuel during the colloquy:

> [T]he [trial] court repeatedly explained that Emmanuel had a right to have a jury decide his guilt or innocence, and each time Emmanuel affirmed his understanding of that right. He confirmed that he had spoken with counsel about the decision to proceed with a bench trial. And Emmanuel affirmed his understanding that the decision of whether to proceed with a jury or a bench trial was his alone to make. He then confirmed his desire to have his case tried by the court rather than a jury.

*Id.* at 670-71.

Similarly, the trial court in this case repeatedly asked Bu if he understood that his right to have twelve people decide his guilt or innocence, and Bu repeatedly confirmed that understanding by answering "yes" in English to every question posed. Bu also confirmed his understanding that, by waiving that right, the trial court would become the trier of fact and would determine his guilt; that he had spoken with defense counsel about his decision; and that he wished to proceed to bench trial. Consistent with our ruling in *Emmanuel*, we conclude that Bu's waiver was knowingly, voluntarily, and intelligently given.[3]

Bu nonetheless argues that the trial court had an obligation to explain the specific consequences of the waiver due to his unfamiliarity with the American legal system and his "limited English proficiency." But, Missouri law does not require that a defendant be proficient in the English language nor the intricacies of America's jury trial system in order to waive a defendant's right to trial by jury. Our "sole focus must be upon whether the record establishes a defendant's waiver was knowing, voluntary, and intelligent and, therefore, constitutionally sufficient." *Hilbert*, 663 S.W.3d at 466 n.6.

Nothing in the record indicates that the language barrier prevented Bu from knowingly, voluntarily, and intelligently entering into the waiver. Bu was provided not

_____

[3] If anything, the trial court's acceptance of the waiver in this case has *more* support in the record than we found in *Emmanuel* because the unanimity issue *was actually addressed* in Bu's written waiver and colloquy. The written waiver explicitly stated that a unanimous verdict was required to convict. And though the trial court was not obligated to inquire about whether Bu understood the specific consequence of unanimity, it read the waiver into the record, and Bu affirmed his understanding of the same.

10

one, but two certified interpreters to assist in his communications with the trial court and defense counsel. Further, Bu demonstrated more than a "limited proficiency" in English throughout the trial. His testimony on direct examination was primarily given in English. And though he opted to testify through an interpreter on his cross examination and redirect examination, there were still instances where he spoke English, including instances where he interjected to correct the interpreter's word choice. The trial court remarked more than once that Bu was clearly understanding the proceedings without relying on simultaneous interpretation because his headset was off.

The record is also bereft of any indication that Bu's cultural background prevented him from understanding the basic tenets of American jurisprudence raised in the waiver and colloquy. Bu had been in the United States for at least nine years at the time of trial. He obtained a Ph.D. in computer science from an American university and published scholarly articles (in English) on complex topics in the field of hearing automation. He clearly had the necessary skillset to ask for clarification on points of law related to his waiver of jury trial, and yet, he raised no concerns during the colloquy, the entirety of the trial, or in his Motion for New Trial. Instead, he waited until *after* he was convicted and *after* his Motion for New Trial was denied to claim that his waiver was insufficient. Though he may now regret his decision to waive a jury trial, his disappointment with the trial court's verdict in retrospect is not cause for reversal. *State v. Britt*, 286 S.W.3d 859, 864 (Mo. App. S.D. 2009) ("Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it.")

11

Bu cites many out-of-jurisdiction cases in an attempt to show that a more searching colloquy was necessary due to his non-native status.  This precedent is unavailing.  In addition to being non-binding authority, all but one case is distinguishable on the grounds that a written waiver was not executed, that the waiver was not given in open court, or that an interpreter was not provided.  *See Rios v. State*, 665 S.W.3d 467, 482 (Tex. Crim. App. 2022) (no jury waiver executed); *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997) (no colloquy regarding the waiver ); *United States v. Robertson*, 45 F.3d 1423, 1433 (10th Cir. 1995) (no colloquy regarding the waiver); *Lopez v. United States*, 615 A.2d 1140, 1146-47 (D.C. 1992) (no meaningful colloquy because it was unclear whether the defendant's single response, "yes," was responding to the trial court's sole question regarding waiver or a different question); *Landeros v. State*, 480 P.2d 273, 275 (Okla. Crim. App. 1971) (no interpreter provided).[4]

Bu argues that the present facts are "strikingly similar" to the non-binding case of *State v. Ernes*, 147 Hawai'i 316 (2020), but even if we indulge this analysis, significant discrepancies from Bu's circumstances are present.  In *Ernes*, the Supreme Court of Hawaii ("*Ernes* court") determined a district court's colloquy was insufficient to establish a valid waiver for a high-school-educated defendant, who was provided a Chuukese interpreter, based on Hawaiian precedent dictating a heightened level of inquiry due to the defendant's limited English proficiency.  *Id.* at 326.  The *Ernes* court determined that the district court's questions were insufficient because they invited only "yes" or "no"

_____

[4] Bu also cites to *United States v. Christensen*, 18 F.3d 822, 822 (9th Cir. 1994), which did not involve a non-native speaker.

12

responses rather than engaging the defendant with open-ended questions that would have required him to elucidate on his understanding of the right waived. *Id.* at 326-27.

Unlike the defendant in *Ernes*, Bu did *not* have a limited English proficiency. He frequently chose not to utilize the interpreter services offered because he was understanding the proceedings *in English*. Further, Missouri precedent does not require a separate method of questioning individuals who have a limited English proficiency.[5] As discussed at length herein, the waiver of a trial by jury is considered knowing, voluntary, and intelligent in Missouri if a defendant "fully understands the nature of the right and how it would likely apply *in general* in the circumstances." *Emmanuel*, 667 S.W.3d at 669.

The circumstances in this case establish that Bu, *who was provided two certified interpreters and holds a Ph.D. in computer science from the University of Missouri*, understood he was entitled to have his guilt or innocence determined by a jury of twelve

---

[5] Bu argues that Missouri courts have recognized a defendant's language and cultural barrier as a significant factor in assessing the validity of a jury trial waiver in *State v. Flores-Martinez*, 654 S.W.3d 402 (Mo. App. S.D. 2022). But *Flores-Martinez* did not reach the question of whether the contents of a waiver were knowing and voluntary. *Id.* at 410. The issue presented was whether a personal waiver was issued at all. *Id.* The sole record in *Flores-Martinez* was a defendant's presence at the bench when the circuit court made "notations in the docket sheet" that the case was set for bench trial and the defense counsel's acknowledgement that the case was set for bench trial in a motion for continuance. *Id.* The Southern District noted the defendant's "unfamiliarity with a legal system" and "difficulty with the English language" as "facts unique to this case," but its discussion of those facts was limited to finding that "justice require[d]" a *sua sponte* review to determine if a personal waiver was given. As established, the trial court in this case received a written waiver signed by Bu and made a lengthy colloquy that ensured Bu fully understood the nature of the right relinquished. Accordingly, *Flores-Martinez* does not alter our analysis.

people and that by waiving that right, the decision of his guilt or innocence would be decided via bench trial. Bu confirmed that he had time to discuss this issue with counsel, that he understood the terms of his written jury trial waiver, and that he wished to proceed with a bench trial. His waiver was knowing, voluntary, intelligent, and thus, constitutionally sufficient. Under these circumstances, Bu fails to demonstrate that the trial court committed any error, plain or otherwise, let alone that he suffered any manifest injustice in the proceedings below.

Point denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Thomas N. Chapman and Janet Sutton, Judges, concur.

14